# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KIM FULLER, §
§
Plaintiff, §
§
v. §   C.A. NO.   3:15-cv-1764
§
PRIMERICA   LIFE   INSURANCE §
COMPANY, §
§
Defendant. §

## DEFENDANT'S INDEX OF STATE COURT MATTERS

Defendant, in connection with the removal of this case to the United States District

Court for the Northern District of Texas, Dallas Division, files its index of state court

matters, pursuant to Local Rule 81, as follows:

| | **State Court Document** | **Date** |
|---|---|---|
| 1. | Notes of Court | N/A |
| 2. | Plaintiff's Original Petition | 04-27-2015 |
| 3. | Request for Issuance of Citation to Primerica Life Insurance Company | 04-27-2015 |
| 4. | Citation Issued to Primerica Life Insurance Company | 04-29-2015 |
| 5. | Defendant's Original Answer | 05-18-2015 |

Respectfully submitted,

By: /s/ Bill E. Davidoff
    Bill E. Davidoff
    State Bar No. 00790565
    bill.davidoff@figdav.com
    Attorney-in-Charge

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas  75202
TEL: 214.939.2000
FAX: 214.939.2090

ATTORNEYS FOR DEFENDANT
PRIMERICA LIFE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties who have appeared and registered with CM/ECF.

/s/ Bill E. Davidoff
Bill E. Davidoff

# EXHIBIT "1"

# FULLER, KIM
## vs
## PRIMERICA LIFE INSURANCE COMPAN
### # 91445



**\* C V 9 1 4 4 5 \***

PAGE _____

**PLAINTIFF/PETITIONER'S ATTORNEY:** _____
**DEFENDANT/RESPONDENT'S ATTORNEY:** _____
**REPORTER :** _____

| DATE | NOTES OF COURT |
|------|----------------|
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |
|      |                |

**CERTIFIED A TRUE COPY**
MELANIE REED
District Clerk, Ellis County, Texas
ATTEST: 5-7-15   pgs   1
Meagan Cooper.   Deputy

# EXHIBIT "2"

Ellis County - District Clerk

Filed 4/27/2015 4:15:12 PM
Melanie Reed
District Clerk
Ellis County, Texas

CAUSE NO. _____91445_____

| | | |
|---|---|---|
| KIM FULLER | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | ELLIS COUNTY, TEXAS |
| | § | |
| PRIMERICA LIFE INSURANCE | § | ____40TH____ JUDICIAL DISTRICT |
| COMPANY | | |

---

## PLAINTIFF'S ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT

COMES NOW, Kim Fuller ("Plaintiff" or "Ms. Fuller") and files Plaintiff's Original Petition against Primerica Life Insurance Company ("Defendant" or "Primerica") for violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act arising out of Defendant's unfair or deceptive acts or practices in the business of insurance, and would respectfully show the Court as follows:

### I.
### DISCOVERY

1.    Discovery is intended to be conducted under Level 3 in accordance with Tex. R. Civ. P. 190.4.

### II.
### PARTIES

2.    Plaintiff is a natural person residing in Ellis County, Texas.

3.    In accordance with Texas Civil Practice & Remedies Code § 30.014, the last three numbers of Plaintiff's driver's license are 795 and the last three numbers of Plaintiff's social security number are 826.

PLAINTIFF'S ORIGINAL PETITION                                    Page 1 of 11

4.      Primerica is a Massachusetts corporation with its principal place of business located at 1 Primerica Pkwy, Duluth, GA 30099. Primerica may be served by and through its registered agent CT Corporation System at 1999 Bryan St. Ste. 900, Dallas, Texas 75201-3136.

### III.
### Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this action because the amount in controversy is within the jurisdictional limits of this Court, i.e. Plaintiff seeks actual damages in an amount greater than $200,000.00 but not more than $1,000,000.00.

6.      The Court may exercise personal jurisdiction over Primerica because (1) Primerica conducts "Business" in Texas, as that term is defined in Texas's long-arm statute; and (2) the Defendant has sufficient contacts with the state of Texas, i.e. contracting to sell insurance to Texas residents, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

7.      Pursuant to Texas Civil Practice & Remedies Code § 15.032, venue is proper in Ellis County, Texas as this is a suit against an insurance company for misrepresenting the terms of a life insurance policy, and Plaintiff, who was an owner of the policy and the beneficiary under the policy, resided in Ellis County when the cause of action accrued.

### IV.
### STATUTORY COMPLIANCE

8.      Plaintiff has fully complied with the pre-suit notice requirements of Texas Business & Commerce Code § 17.505 and Texas Insurance Code § 541.154. Plaintiff sent Primerica the required pre-suit notice letter on January 31, 2015, via certified mail, return receipt requested. Defendant received Plaintiff's pre-suit notice letter on February 5, 2015. At least 60

days have passed since Defendant received Plaintiff's pre-suit notice letter. A copy of Plaintiff's pre-suit notice letter is attached hereto as Exhibit "A."

**IV.**
**BACKGROUND**

9.      Plaintiff repeats and incorporates by reference paragraphs 1 through 8 above.

10.      In May of 1990, Ms. Fuller and her husband, James Fuller, purchased a 20-year level term life insurance policy from Primerica (the "Policy"), insuring Mr. Fuller's life and naming Ms. Fuller as the Policy beneficiary. While Ms. Fuller understood simply that the Policy provided the Fullers with a total of $500,000.00 in combined coverage on Mr. Fuller's life, the Policy was actually structured as a base plan providing $100,000.00 in coverage on Mr. Fuller's life, plus three riders. Only one of the three riders, the Modified Premium Term Insurance Additional Benefits Rider, is at issue in this lawsuit, (the "Rider"). The Rider provided for an additional $400,000.00 in coverage on Mr. Fuller's Life. Thus, the Policy plus the Rider resulted in $500,000.00 in coverage on Mr. Fuller's life with Ms. Fuller as the beneficiary. A copy of the Policy and Rider are attached hereto as Exhibit "B."

11.      According to the terms of the Policy, the Rider was issued on May 17, 1990 and had a ten-year term. At the end of the initial ten year term, the Rider automatically renewed for an additional ten year term, with a final expiration date of May 17, 2010.

12.      In 2008, Mr. Fuller was diagnosed with Melanoma.

13.      On March 9, 2010, about two months before the Rider was set to expire, Primerica sent the Fullers a letter, a copy of which is attached as Exhibit "C," that read:

Dear Valued Policyholder,

Your current insurance policy with Primerica Life has a rider(s) attached that will reach the end of its term and expire 05/17/2010. At that time, your premium will change to $453.16.

PLAINTIFF'S ORIGINAL PETITION                                    Page 3 of 11

This Change is scheduled to occur within the next 60 days, and we strongly encourage you to review your life insurance needs.

To help you make an informed decision concerning options that may be available to you, please contact your Primerica Life representative. If you are unable to reach him/her, please call our toll free Client Services Line.

As Always, we appreciate your business.

14. In response to this letter, Ms. Fuller called Primerica directly as instructed on May 3, 2010. Ms. Fuller made the call to find out what the letter was referring to, why the premium was going up by nearly $200.00 and, given the fact that Mr. Fuller had cancer, to ensure that she did everything necessary to maintain the $500,000 in coverage she had on her husband's life.

15. Ms. Fuller spoke with a Primerica representative, who was acting within the course and scope of employment with Primerica. During this conversation, Ms. Fuller asked why the premium was increasing. The agent responded by telling Ms. Fuller that the premium was increasing because the Rider was expiring. When Ms. Fuller asked the representative to explain what the Rider was, the representative explained that the rider was the feature that was holding the premium down in the first place (in other words, the Primerica representative equated the Rider with the expiration of the level term). The Primerica representative did not state that any other rider was expiring or that the amount of coverage on Mr. Fuller's life was about to drop by $400,000.00. In fact, Ms. Fuller asked the Primerica representative to confirm the amount of coverage. In response, the Primerica representative confirmed that Mr. Fuller would still be insured for $500,000.00. As a result, Ms. Fuller hung up the phone with the good faith belief that she had $500,000.00 in coverage on her terminally-ill husband, and that all she needed to do to retain this coverage was to continue to pay the increased premium.

PLAINTIFF'S ORIGINAL PETITION                                    Page 4 of 11

16.     The Primerica representative's statements to Ms. Fuller during the telephone conversation were not true. The Rider that was expiring was actually the Modified Premium Term Insurance Additional Benefits Rider that provided $400,000 in coverage in addition to the base amount of $100,000. In addition, paying the increased premium was not all Ms. Fuller needed to do to maintain the $500,000.00 in coverage on Mr. Fuller's life.

17.     Unbeknownst to Ms. Fuller, the Policy contained a conversion option that read:

CONVERSION AT ATTAINED AGE – You may convert this Policy at any time after it has been in force for five years if the following conditions are met: (1) we receive Notice to Us for conversion; (2) you pay us the required premium no later than 31 days after the conversion date while the Insured is alive; (3) this Policy is in force on the conversion date; (4) the new plan is (a) the yearly renewable level term insurance to age 100 plan; or (b) the decreasing term insurance to age 100 plan; or (c) any other plan of insurance then available under our rules; and (5) the face amount of the new plan is not less than the minimum required by us for the plan selected nor greater than the face amount in effect on the conversion date under this Policy. We will not require evidence of insurability.

The Rider also contained a conversion option, again unbeknownst to Ms. Fuller, that read:

PRIVILEGE OF CONTINUATION – If the Policy, exclusive of this Rider, is converted, this Rider may be continued as a part of the new plan of insurance.

CONVERSION PROVISION – Upon conversion of the base plan, this Rider may also be converted to a new plan of insurance on the life of the Insured if the following conditions are met: (1) we receive Notice to Us for conversion; (2) the required premium is paid to us no later than 31 days after the conversion date while the Insured is alive; (3) this Rider is in force on the conversion date; (4) the new plan is: (a) the yearly renewable level term insurance to age 100 plan; or (b) the decreasing term insurance to age 100 plan; or (c) any other plan of insurance available at a future date; and (5) the face amount of the new plan is not less than the minimum required by us for the plan selected nor greater than the Face Amount in effect on the conversion date. We will not require evidence of insurability.

However, Primerica's agent failed to disclose these conversion options to Ms. Fuller. If the Primerica agent had told Ms. Fuller the truth—that the coverage on Mr. Fuller was dropping to $100,000.00, but that the Fullers had the right to convert the Policy and Rider to maintain

PLAINTIFF'S ORIGINAL PETITION                                                    Page 5 of 11

$500,000.00 of insurance—Ms. Fuller would have converted the Policy and Rider. After all, Mr. Fuller had cancer. Instead, Ms. Fuller relied on the Primerica agent's misrepresentations, continued to pay premiums, and did not exercise the conversion options.

18.    Subsequently, Mr. Fuller passed away in September 2013. In the midst of mourning the death of her husband, Ms. Fuller submitted a claim to Primerica for the life insurance proceeds, and as a result of Primerica's misrepresentations, fully expected to receive a check in the amount of $500,000.00. Instead, Ms. Fuller received a check from Primerica in the amount of $100,438.60 and, for the first time, learned that she had been deceived. In reliance on Primerica's misrepresentations, Ms. Fuller had continued paying the increased premiums after the Rider expired believing that the family continued to have $500,000.00 in coverage on Mr. Fuller's life. This reliance caused the Rider to lapse without the Fullers exercising their conversion options under the Policy and Rider. Thus, Ms. Fuller brings this action to recover damages for Primerica's misrepresentations.

## V.
## Causes of Action

### A. Deceptive Acts or Practices in the Business of Insurance.

19.    Plaintiff repeats and incorporates by reference paragraphs 1 through 18 above.

20.    Chapter 541 of the Texas Insurance Code makes it unlawful to engage in a trade or practice that is determined to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. Tex. Ins. Code. Ann. § 541.003 (Tex. 2008). Primerica's actions constitute an unfair or deceptive act or practice in the business of insurance on multiple grounds.

21.    First, section 541.051 of the Insurance Code provides that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to …

make a misrepresentation to a policyholder insured by any insurer for the purpose of inducing or that tends to induce the policyholder to allow an existing policy to lapse or to forfeit or surrender the policy." Tex. Ins. Code Ann. § 541.051 (emphasis added).

22.    The misrepresentations made by Primerica to Ms. Fuller during the May 3, 2010 telephone conversation violated section 541.051 because Primerica's agent, acting on behalf of the company, misrepresented the terms of the Rider by telling Ms. Fuller that the Rider was merely a premium hold and that the Fullers had coverage in the amount of $500,000.00. Moreover, Primerica's agent failed to even mention the conversion options, a material fact, which would have allowed the Fullers to retain coverage in the amount of $500,000.00. These misrepresentations, coupled with the failure to disclose material facts, were either for the purpose of inducing, or tended to induce Ms. Fuller to allow the Rider to lapse without exercising the conversion options. After all, it was in Primerica's best interest to allow coverage to drop to $100,000.00, especially considering the fact that Mr. Fuller had cancer. Ms. Fuller relied on Primerica's misrepresentations to her detriment.

23.    Primerica's misrepresentations during the May 3, 2010 telephone conversation also violated section 541.061 of the Insurance Code, which provides that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. Tex. Ins. Code. Ann. § 541.060.

24.     When Ms. Fuller called Primerica, the Primerica agent told Ms. Fuller that the Rider was merely a premium hold and that the Fullers still had $500,000.00 in coverage. These statements were not true. The expiring Rider was not a premium hold, but rather the source of an additional $400,000.00 in coverage. The premium was increasing because the 20 year level plan was set to expire.

25.     With respect to the amount of coverage the Fullers had, the Primerica agent failed to mention the material fact that although the Rider was expiring, the Fullers had the option of converting the Rider and the base policy to a new insurance policy, which would continue to provide $500,000.00 in coverage without the requirement that Mr. Fuller show proof of insurability. Thus, not only did Primerica make misrepresentations of material fact with respect to the effect of the Rider expiration and the amount of coverage, Primerica also failed to state material facts that would make the statements with respect to the Rider and the amount of coverage not misleading. There is no doubt that Ms. Fuller would have converted the Policy and Rider had Primerica correctly represented the terms of the Policy and Rider.

26.     The conduct of Primerica's agent is imputed to Primerica through the doctrine of *respondeat superior*.

27.     As a result of Primerica's deceptive acts or practices in the business of insurance, Ms. Fuller relied on Primerica's representations and allowed the Rider to expire without the Fullers exercising their option to convert the Policy and the Rider to a new plan of insurance with $500,000.00 of coverage. Thus, Ms. Fuller has suffered actual damages in the amount of $400,000.00.

28.     Primerica's conduct, as described in this petition, and the resulting damage and loss to Ms. Fuller, has necessitated Ms. Fuller's retention of the attorneys whose names are

subscribed to this petition. Ms. Fuller is, therefore, entitled to recover from Primerica an additional sum to compensate Ms. Fuller for a reasonable fee for such attorneys' necessary services in the preparation and prosecution of this action, as well as a reasonable fee for any and all necessary appeals to other courts. Tex. Ins. Code Ann § 541.152(a).

29.    Primerica "knowingly" engaged in the deceptive acts or practices in the business of insurance described in this petition. Primerica was actually aware, at the time of the conduct, of the falsity, unfairness, or deceptiveness of the conduct of which Ms. Fuller Complains. Thus, under section 541.152(b) of the Texas Insurance Code, Ms. Fuller is entitled to an additional award in an amount not to exceed three times the amount of actual damages.

**B. Violation of the Texas Deceptive Trade Practices Act ("DTPA").**

30.    Plaintiff repeats and incorporates by reference paragraphs 1 through 29 above.

31.    At all times during the events giving rise to this lawsuit, the Fullers were consumers, as that term is defined in the DTPA. The Fuller's acquired a policy of life insurance from Primerica, and this consumer status was not limited to the instance when the Fullers first acquired the Policy in 1990. Instead, the Fullers obtained consumer status each and every time they paid their monthly premium to maintain the life insurance policy and all applicable riders.

32.    Primerica's violation of Chapter 541 of the Texas Insurance Code, as set forth above, constitutes an actionable violation of the DTPA. Tex. Bus. & Com. Code Ann. § 17.50 (a)(4).

33.    The defendant's deceptive acts or practices, as described above were a producing cause of Ms. Fuller's economic damages. As a result, Ms. Fuller sustained economic damages in the amount of $400,000.00.

PLAINTIFF'S ORIGINAL PETITION                                    Page 9 of 11

34.     Primerica's conduct, as described in this petition, and the resulting damage and loss to Ms. Fuller, has necessitated Ms. Fuller's retention of the attorneys whose names are subscribed to this petition. Ms. Fuller is, therefore, entitled to recover from Primerica an additional sum to compensate Ms. Fuller for a reasonable fee for such attorneys' necessary services in the preparation and prosecution of this action, as well as a reasonable fee for any and all necessary appeals to other courts.

35.     Primerica "knowingly" engaged in the deceptive acts or practices in the business of insurance described in this petition. Primerica was actually aware, at the time of the conduct, of the falsity, unfairness, or deceptiveness of the conduct of which Ms. Fuller Complains. Accordingly, Primerica is liable to Ms. Fuller for additional damages of up to three times the amount of economic damages as permitted by the Deceptive Trade Practices--Consumer Protection Act.

## VI.
## PRAYER

WHEREFORE, premises considered, Ms. Fuller requests that Primerica be cited to appear and answer, and that on final trial, Ms. Fuller have the following:

1.     judgment against Primerica for $400,000.00;

2.     additional damages as provided by Tex. Ins. Code Ann. § 541.152(a) & Tex. Bus. & Com. Code Ann. § 17.50;

3.     prejudgment interest as provided by law;

4.     attorneys' fees;

5.     post-judgment interest as provided by law;

6.     costs of court; and

7.     such other and further relief to which she may be justly entitled.

Respectfully submitted,

POTTER MINTON
A Professional Corporation
110 N. College Avenue, Suite 500
Tyler, TX  75702
(903) 597-8311
(903) 593-0846 (Facsimile)


By: /s/ E. Glenn Thames, Jr.
    E. Glenn Thames, Jr.
    Texas Bar No. 00785097
    glennthames@potterminton.com
    Patrick C. Bell
    Texas Bar No. 24092115
    patrickbell@potterminton.com

ATTORNEYS FOR PLAINTIFF
KIM FULLER

# POTTER MINTON
## — A Professional Corporation

MICHAEL E. JONES
JOHN F. BUFE
JAMES L. HEDRICK
E. GLENN THAMES, JR.
ALLEN F. GARDNER
D. TIMOTHY SIMPSON
RONALD D. STUTES
J. MATT ROWAN
PATRICK C. CLUTTER, IV
DANIEL A. NOTEWARE, JR.
HA H. KUMMERFELD
PATRICK C. BELL

OF COUNSEL:
JOHN H. MINTON
RANDALL L. ROBERTS
HON. DIANE V. DeVASTO
DOUGLAS R. McSWANE, JR.

CHARLES F. POTTER
1909-1999

500 PLAZA TOWER
110 N. COLLEGE
TYLER, TEXAS
75702

TELEPHONE
903.597.8311

FACSIMILE
903.593.0846

WWW.POTTERMINTON.COM

January 30, 2015

Primerica Life Insurance Company    CERTIFIED MAIL – RETURN RECEIPT REQUESTED
3120 Breckinridge Boulevard
Duluth, Georgia 30099-0001

Certified Article Number
9414 7266 9904 2001 5607 53
SENDERS RECORD

Re:   Policy No. 0421008265
Insured: James L. Fuller
Claim No. 2013254040

Dear Madam or Sir:

This firm has been retained by Ms. Kim Fuller, the surviving spouse of James L. Fuller and beneficiary of the above-referenced policy.

This pre-suit notice letter, sent in accordance with Section 541.154 of the Texas Insurance Code and Section 17.505(a) of the Texas Business and Commerce Code, is written to provide your company with notice of my client's claim, and to further advise in reasonable detail: (1) the factual basis underlying Ms. Fuller's complaint; (2) the amount of Ms. Fuller's economic damages; and (3) the amount of expenses, including attorneys' fees, reasonably incurred by Ms. Fuller in asserting her claim. It is our hope that this letter, and the accompanying 60 day pre-suit waiting period, will provide your company and my client an opportunity to resolve this dispute prior to litigation.

The facts underlying Ms. Fuller's complaint are as follows:

On or about May 3, 2010, Ms. Fuller contacted Primerica Life Insurance Company by telephone and spoke to a representative of the company. Prior to the call, Mr. Fuller had been diagnosed with cancer and the Fullers had received a letter from the company stating that an unidentified rider to the policy was set to expire on May 17, 2010. During the call, Ms. Fuller inquired about the letter and the amount of coverage on Mr. Fuller's life. In response to Ms. Fuller's inquiries, Primerica's representative stated that the rider referenced in the letter was the feature keeping the premium down and its expiration was the reason for the increase in premium. As for coverage, the representative informed Ms. Fuller that the amount of coverage on Mr. Fuller remained $500,000. Unbeknownst to the Fullers, these statements by Primerica's representative were false. The rider referenced in the letter was actually the source of $400,000 of coverage on Mr. Fuller's life and therefore its expiration would cause the amount of coverage fall from $500,000 to $100,000. Had Primerica's representative told Ms. Fuller the truth, the


EXHIBIT
A

January 30, 2015
Page 2

Fullers could have and would have exercised the right to convert the policy, including the $400,000 rider, to the yearly renewable level term insurance to age 100 plan. Instead, however, as a result of, and in reliance on Primerica's misrepresentations with respect to the terms of Mr. Fuller's insurance policy/coverage, the Fullers continued to pay premiums with the belief that Mr. Fuller was insured for $500,000. These misrepresentations, made by and through Primerica's agents while acting within the course and scope of their employment, constitute an unfair method or deceptive act or practice in the business of insurance, and ultimately caused the economic damages and expenses, as set forth below.

Subsequently, Mr. Fuller died in September of 2013. Ms. Fuller submitted a claim and, as a result of the misrepresentations by Primerica's agent, expected to receive a check for $500,000. Instead, she received $100,000 and, for the first time, learned that she had been deceived. Due to the false representations of Primerica's representative, Ms. Fuller has suffered actual economic damages of $400,000, has been forced to retain counsel to pursue this claim, and has incurred $5,000 in attorneys' fees to date. Moreover, if suit is filed, Ms. Fuller will seek recovery of economic damages, attorney's fees in prosecuting the action to conclusion, and any other relief to which she may be entitled.

If at the end of the sixty (60) day pre-suit notice period, this dispute has not been resolved, my client will file suit to recover any and all available damages, both at law and in equity, based on the allegations set forth above. Any offers of settlement made by your company should be sent in writing to the undersigned.

In the meantime, please secure and prevent the destruction of the above-referenced policy, your entire claim file, and any correspondence, reports, notes, recordings, statements or other information pertaining to communications between any representatives of Primerica Life Insurance Company and Mr. or Mrs. Fuller.

In addition, please provide me with copies of all correspondence between Primerica and Mr. or Mrs. Fuller between January 1, 2010 and the present, as well as any notes or audio recordings you may have of oral communications between representatives of Primerica and Mr. or Mrs. Fuller, regardless of date. Please let me know if you have any such recordings and, if so, the cost of reproducing them and I will to make arrangements to reimburse you for such costs as well as the copying cost for the correspondence and any notes. Please contact me upon your receipt of this letter and let me know when this can be done.

Thank you for your attention to this matter. I look forward to hearing from you soon.

Sincerely,

POTTER MINTON
A Professional Corporation

E. Glenn Thames, Jr.

{A35/09730/0001/W1271863.1 }

**2. Article Number**

9414 7266 9904 2001 5807 53

**3. Service Type   CERTIFIED MAIL®**

**4. Restricted Delivery? *(Extra Fee)*** ☐ Yes

**1. Article Addressed to:**

Primerica Life Insurance Company
3120 Breckinridge Boulevard
Duluth, GE 30099-0001

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X _____    ☐ Agent
                               ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

**Reference Information**

9730-1-A35

A35

FEB 5 2015

PS Form 3811, January 2005          Domestic Return Receipt

 **PRIMERICA®**

**Primerica Life Insurance Company**
1 Primerica Parkway
Duluth, Georgia 30099-0001

We agree to pay the Face Amount to the Beneficiary upon receiving due proof that the Insured died before the Expiry Date shown on Page 3 and while this Policy was in force. This agreement is subject to the provisions on the following pages.

**RIGHT TO RETURN POLICY:** You may return this Policy for any reason to us within 20 days after it is received. If returned, it will be considered void from the beginning and any premium paid will be refunded.

The provisions on the following pages are part of the Policy.

Signed on the Date of Issue at our Executive Office.

_____
Secretary

_____
President

MODIFIED PREMIUM TERM LIFE INSURANCE TO AGE 100.

PREMIUMS SUBJECT TO CHANGE.
CONVERTIBLE AFTER FIVE YEARS TO YEARLY RENEWABLE LEVEL
OR DECREASING TERM INSURANCE.

NONPARTICIPATING

# DUPLICATE

Primerica Life Insurance Company
(A Stock Company)
Home Office:  Boston, Massachusetts


**EXHIBIT**
**B**

ML-T95TX

4.88

## TABLE OF CONTENTS

PART 1:    DEFINITIONS ........................................................................................ Page  4

PART 2:    GENERAL PROVISIONS ....................................................................... Page  4

PART 3:    BENEFICIARY PROVISIONS ................................................................ Page  5

PART 4:    PREMIUM PROVISIONS ....................................................................... Page  5

PART 5:    CONVERSION PROVISIONS ................................................................. Page  6

PART 6:    SETTLEMENT OPTIONS ....................................................................... Page  7

# PRIMERICA LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 1 Primerica Parkway, Duluth, Georgia  30099–0001

### IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Primerica Life Insurance Company's toll–free telephone number for information or to make a complaint at

**1–800–257–4725**

You may also write to Primerica Life Insurance Company at:

1 Primerica Parkway
Duluth, Georgia 30099–0001

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at

**1–800–252–3439**

You may write the Texas Department of Insurance

P.O. Box 149104
Austin, TX 78714–9104
FAX: (512) 475–1771
Web: http://www.tdi.state.tx.us
E–mail: ConsumerProtection@tdi.state.tx.us

### PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

### ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

### AVISO IMPORTANTE

Para obtener información o para someter una queja:

Usted puede llamar al número de teléfono gratis de Primerica Life Insurance Company para información o para someter una queja al

**1–800–257–4725**

Usted también puede escribir a Primerica Life Insurance Company a:

1 Primerica Parkway
Duluth, Georgia 30099–0001

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas al

**1–800–252–3439**

Puede escribir al Departamento de Seguros de Texas

P.O. Box 149104
Austin, TX 78714–9104
FAX: (512) 475–1771
Web: http://www.tdi.state.tx.us
E–mail: ConsumerProtection@tdi.state.tx.us

### DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con la compañía primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

### UNA ESTE AVISO A SU PÓLIZA:

Este aviso es sólo para propósito de información y no se convierte en parte o condición del documento adjunto.

DUPLICATE

ML–T95TX

## POLICY SPECIFICATIONS

| FORM NUMBER | FACE AMOUNT | POLICY YEARS | ANNUAL PREMIUMS * CURRENT | MAXIMUM | DISABILITY WAIVER |
|---|---|---|---|---|---|
| ML-T95TX | $100,000 | 1—20 | $207.00 | $267.00 | ( NOT INCLUDED ) |

### ADDITIONAL BENEFITS

| FORM NUMBER | KIND AND AMOUNT OF BENEFITS | ANNUAL PREMIUM |
|---|---|---|
| ML-967TX | MOD PREM ADD BENEFITS INSURED RIDER FACE AMOUNT $400,000 | $ 468.00 |
| ML-877ATX | MOD PREM TERM SPOUSE RIDER FACE AMOUNT $100,000 | $ 144.00 |
| ML-909B | CHILDRENS TERM INS. RIDER TO AGE 25 FACE AMOUNT $10,000 | $ 65.00 |
| CP-S10TX | SPOUSE TERM INSURANCE RIDER FACE AMOUNT $150,000 | $ 117.00 |

ANNUAL POLICY CHARGE: $50
* CURRENT PREMIUMS ARE SUBJECT TO CHANGE AFTER THE FIRST POLICY YEAR, BUT MAY NOT BE INCREASED BEYOND MAXIMUM. PREMIUMS INCLUDE THE ANNUAL POLICY CHARGE AMOUNT SHOWN ABOVE. PREMIUMS FOR LATER POLICY YEARS ARE: (1) ON PAGE 3A IF THE BASIC POLICY IS CONTINUED TO THE EXPIRY DATE; OR (2) ON PAGE 3B IF THE POLICY IS CONVERTED. SEE PREMIUM AND CONVERSION PROVISIONS.
TOTAL PRESENT YEAR PREMIUM FOR AVAILABLE FREQUENCIES (INCLUDES ALL RIDERS):

| ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
|---|---|---|---|
| $1,001.00 | $520.52 | $265.28 | $95.11 |

### POLICY SCHEDULE

| | | | |
|---|---|---|---|
| POLICY NUMBER | 0421008265 | INSURED | JAMES L FULLER |
| ISSUE AGE | 30 | DATE OF ISSUE | DUPLICATE |
| FACE AMOUNT | $100,000 | POLICY DATE | MAY 17, 1990 |
| PREMIUM CLASS | STANDARD / NON-SMOKER | EXPIRY DATE | MAY 17, 2060 |

ML-T95TX                    POLICY PAGE 3                    4.88

DUPLICATE

POLICY SPECIFICATIONS (CONT'D)
TABLE A
ANNUAL PREMIUMS FOR BASIC POLICY CONTINUATION TO EXPIRY DATE
PER $1,000 FACE AMOUNT

| POLICY YEARS | CURRENT ANNUAL PREMIUMS* | MAXIMUM ANNUAL PREMIUMS |
|---|---|---|
| 21-40 | 8.24 | 11.55 |
| 41 | 27.17 | 34.63 |
| 42 | 29.43 | 38.91 |
| 43 | 30.54 | 42.56 |
| 44 | 32.25 | 47.44 |
| 45 | 35.24 | 52.92 |
| 46 | 38.54 | 58.80 |
| 47 | 42.16 | 65.06 |
| 48 | 46.07 | 71.64 |
| 49 | 50.28 | 78.47 |
| 50 | 54.79 | 85.72 |
| 51 | 59.61 | 93.67 |
| 52 | 64.59 | 102.52 |
| 53 | 69.94 | 112.52 |
| 54 | 78.19 | 123.79 |
| 55 | 88.58 | 136.11 |
| 56 | 95.59 | 149.20 |
| 57 | 101.85 | 162.80 |
| 58 | 112.45 | 176.79 |
| 59 | 126.34 | 190.89 |
| 60 | 136.50 | 205.29 |
| 61 | 147.17 | 220.19 |
| 62 | 155.00 | 235.84 |
| 63 | 163.32 | 252.75 |
| 64 | 174.01 | 271.63 |
| 65 | 187.76 | 295.65 |
| 66 | 207.80 | 329.96 |
| 67 | 242.18 | 384.55 |
| 68 | 294.17 | 480.20 |
| 69 | 369.49 | 657.98 |
| 70 | 481.33 | 956.94 |

NOTE:  AFTER DETERMINING PREMIUM FOR FACE AMOUNT, ADD ANNUAL POLICY CHARGE
       SHOWN ON PAGE 3.
* CURRENT PREMIUMS ARE SUBJECT TO CHANGE BUT MAY NOT BE INCREASED BEYOND
MAXIMUM.  SEE PREMIUM PROVISIONS.

ML-T95TX                      POLICY PAGE 3A                      4.88
DUPLICATE

## POLICY SPECIFICATIONS (CONT'D)

### TABLE B
### ANNUAL PREMIUMS PER $1,000 INITIAL CONVERTED FACE AMOUNT

THESE PREMIUMS ARE APPLICABLE TO THE FACE AMOUNT CONVERTED UNDER THIS POLICY TO: (1) THE YEARLY RENEWABLE LEVEL TERM TO AGE 100 PLAN; OR (2) THE DECREASING TERM TO AGE 100 PLAN. SEE CONVERSION PROVISIONS.

| ATTAINED AGE | CURRENT ANNUAL PREMIUMS* | MAXIMUM ANNUAL PREMIUMS |
|---|---|---|
| 21 | $ 1.36 | $ 1.67 |
| 22 | 1.36 | 1.67 |
| 23 | 1.36 | 1.67 |
| 24 | 1.36 | 1.67 |
| 25 | 1.36 | 1.67 |
| 26 | 1.36 | 1.68 |
| 27 | 1.36 | 1.68 |
| 28 | 1.36 | 1.68 |
| 29 | 1.36 | 1.68 |
| 30 | 1.36 | 1.68 |
| 31 | 1.37 | 1.68 |
| 32 | 1.41 | 1.69 |
| 33 | 1.45 | 1.74 |
| 34 | 1.49 | 1.79 |
| 35 | 1.53 | 1.84 |
| 36 | 1.58 | 1.90 |
| 37 | 1.64 | 1.97 |
| 38 | 1.64 | 2.00 |
| 39 | 1.72 | 2.14 |
| 40 | 1.81 | 2.29 |
| 41 | 1.90 | 2.47 |
| 42 | 1.99 | 2.65 |
| 43 | 2.09 | 2.86 |
| 44 | 2.26 | 3.07 |
| 45 | 2.45 | 3.32 |
| 46 | 2.65 | 3.59 |
| 47 | 2.86 | 3.88 |
| 48 | 3.10 | 4.19 |
| 49 | 3.40 | 4.54 |
| 50 | 3.73 | 4.91 |
| 51 | 4.05 | 5.35 |
| 52 | 4.45 | 5.86 |
| 53 | 4.90 | 6.43 |
| 54 | 5.43 | 7.09 |
| 55 | 6.02 | 7.82 |
| 56 | 6.69 | 8.63 |
| 57 | 7.42 | 9.49 |
| 58 | 8.66 | 10.42 |
| 59 | 9.57 | 11.48 |
| 60 | 11.08 | 13.30 |

NOTE: AFTER DETERMINING PREMIUM FOR FACE AMOUNT, ADD ANNUAL POLICY CHARGE SHOWN ON PAGE 3.
\* SUBJECT TO CHANGE. SEE CONVERSION PROVISIONS.

## POLICY SPECIFICATIONS (CONT'D)

### TABLE B (CONT'D)
### ANNUAL PREMIUMS PER $1,000 INITIAL CONVERTED FACE AMOUNT

THESE PREMIUMS ARE APPLICABLE TO THE FACE AMOUNT CONVERTED UNDER THIS POLICY TO: (1) THE YEARLY RENEWABLE LEVEL TERM TO AGE 100 PLAN; OR (2) THE DECREASING TERM TO AGE 100 PLAN. SEE CONVERSION PROVISIONS.

| ATTAINED AGE | CURRENT ANNUAL PREMIUMS* | MAXIMUM ANNUAL PREMIUMS |
|---|---|---|
| 61 | $ 12.71 | $ 15.25 |
| 62 | 13.92 | 16.70 |
| 63 | 15.70 | 18.84 |
| 64 | 17.18 | 20.62 |
| 65 | 18.76 | 22.51 |
| 66 | 20.25 | 24.30 |
| 67 | 21.96 | 26.35 |
| 68 | 23.89 | 28.67 |
| 69 | 24.90 | 31.38 |
| 70 | 27.17 | 34.63 |
| 71 | 29.43 | 36.91 |
| 72 | 30.54 | 42.56 |
| 73 | 32.26 | 47.44 |
| 74 | 35.24 | 52.92 |
| 75 | 38.54 | 58.80 |
| 76 | 42.16 | 65.06 |
| 77 | 46.07 | 71.64 |
| 78 | 50.28 | 78.47 |
| 79 | 54.79 | 85.72 |
| 80 | 59.81 | 93.67 |
| 81 | 64.59 | 102.52 |
| 82 | 69.94 | 112.52 |
| 83 | 76.19 | 123.79 |
| 84 | 88.58 | 136.11 |
| 85 | 95.59 | 149.20 |
| 86 | 101.86 | 162.80 |
| 87 | 112.45 | 176.79 |
| 88 | 123.34 | 190.89 |
| 89 | 136.50 | 205.29 |
| 90 | 147.17 | 220.19 |
| 91 | 155.00 | 235.84 |
| 92 | 163.32 | 252.75 |
| 93 | 174.01 | 271.63 |
| 94 | 187.76 | 295.65 |
| 95 | 207.80 | 329.96 |
| 96 | 242.19 | 384.55 |
| 97 | 294.17 | 480.20 |
| 98 | 369.49 | 657.98 |
| 99 | 481.83 | 956.94 |

NOTE: AFTER DETERMINING PREMIUM FOR FACE AMOUNT, ADD ANNUAL POLICY CHARGE SHOWN ON PAGE 8.
* SUBJECT TO CHANGE. SEE CONVERSION PROVISIONS.

## POLICY SPECIFICATIONS (CONT'D)

### TABLE C
### FACE AMOUNT PER $100 BASIC ANNUAL PREMIUM

THESE VALUES ILLUSTRATE THE FACE AMOUNT PAYABLE ON DEATH IF THIS POLICY IS CONVERTED TO DECREASING TERM INSURANCE TO AGE 100. BASIC ANNUAL PREMIUM DOES NOT INCLUDE THE ANNUAL POLICY CHARGE. SEE CONVERSION PROVISIONS.

| ATTAINED AGE | MINIMUM FACE AMOUNT |
|---|---|
| 21 | $59,880 |
| 22 | 59,880 |
| 23 | 59,880 |
| 24 | 59,880 |
| 25 | 59,880 |
| 26 | 59,523 |
| 27 | 59,523 |
| 28 | 59,523 |
| 29 | 59,523 |
| 30 | 59,523 |
| 31 | 59,523 |
| 32 | 59,171 |
| 33 | 57,471 |
| 34 | 55,865 |
| 35 | 54,347 |
| 36 | 52,831 |
| 37 | 50,761 |
| 38 | 50,000 |
| 39 | 46,728 |
| 40 | 43,668 |
| 41 | 40,485 |
| 42 | 37,735 |
| 43 | 34,965 |
| 44 | 32,573 |
| 45 | 30,120 |
| 46 | 27,855 |
| 47 | 25,773 |
| 48 | 23,866 |
| 49 | 22,026 |
| 50 | 20,366 |
| 51 | 18,691 |
| 52 | 17,064 |
| 53 | 15,552 |
| 54 | 14,104 |
| 55 | 12,787 |
| 56 | 11,587 |
| 57 | 10,537 |
| 58 | 9,596 |
| 59 | 8,710 |
| 60 | 7,518 |

## POLICY SPECIFICATIONS (CONT'D)

### TABLE C (CONT'D)
### FACE AMOUNT PER $100 BASIC ANNUAL PREMIUM

THESE VALUES ILLUSTRATE THE FACE AMOUNT PAYABLE ON DEATH IF THIS POLICY IS CONVERTED TO DECREASING TERM INSURANCE TO AGE 100. BASIC ANNUAL PREMIUM DOES NOT INCLUDE THE ANNUAL POLICY CHARGE. SEE CONVERSION PROVISIONS.

| ATTAINED AGE | MINIMUM FACE AMOUNT |
|---|---|
| 61 | $6,557 |
| 62 | 5,988 |
| 63 | 5,307 |
| 64 | 4,849 |
| 65 | 4,442 |
| 66 | 4,115 |
| 67 | 3,795 |
| 68 | 3,487 |
| 69 | 3,186 |
| 70 | 2,887 |
| 71 | 2,570 |
| 72 | 2,349 |
| 73 | 2,107 |
| 74 | 1,889 |
| 75 | 1,700 |
| 76 | 1,537 |
| 77 | 1,395 |
| 78 | 1,274 |
| 79 | 1,166 |
| 80 | 1,067 |
| 81 | 975 |
| 82 | 888 |
| 83 | 807 |
| 84 | 734 |
| 85 | 670 |
| 86 | 614 |
| 87 | 565 |
| 88 | 523 |
| 89 | 487 |
| 90 | 454 |
| 91 | 424 |
| 92 | 395 |
| 93 | 368 |
| 94 | 338 |
| 95 | 303 |
| 96 | 260 |
| 97 | 208 |
| 98 | 151 |
| 99 | 104 |

## PART 1
## DEFINITIONS

These are some of the key words used in this Policy. They are important in describing both your rights and ours.

1.  *YOU or YOUR* – The owner of the Policy. The owner will be the Insured unless otherwise provided in the application, or later changed by Notice to Us.

2.  *WE, OUR or US* – Primerica Life Insurance Company: Executive Office, 1 Primerica Parkway, Duluth, Georgia 30099–0001.

3.  *INSURED* – The person whose life is insured under the Policy. The Insured is named in the Policy Schedule on Page 3.

4.  *NOTICE TO US* – Information we have received which is written, signed by you, and is acceptable to us.

5.  *BENEFICIARY* – The person(s) to whom the proceeds of the Policy are payable at the death of the Insured. This is the person named in the application unless later changed (see Part 3).

6.  *DATE OF ISSUE* – The date shown on Page 3 on which we issue the Policy to you. This date controls the Incontestability and Suicide Exclusion Provisions in Part 2.

7.  *POLICY DATE* – The date shown on Page 3, from which premium due dates, Policy anniversaries, Policy years and Policy months are measured.

8.  *ISSUE AGE* – The Insured's age on the birthday nearest the Policy Date.

9.  *ATTAINED AGE* – The Issue Age plus the number of Policy years elapsed since the Policy Date.

10. *EXPIRY DATE* – The date shown on the Policy Schedule. This Policy is no longer in force on and after that date.

## PART 2
## GENERAL PROVISIONS

*OWNER OF POLICY* – This Policy belongs to you, the owner. During the lifetime of the Insured, you have all of the rights described in this Policy. In the event of your death, your rights will pass to the contingent owner, if any, otherwise to the Insured.

*THE CONTRACT* – This Policy is issued in consideration of the application and payment of the first premium. A copy of the application, including any supplemental applications, is attached and is a part of the Policy. Together, they are the entire contract. All statements in the application are deemed to be representations and not warranties. No statement will void this Policy or be used in defense of a claim unless: (1) it is contained in the written application; and (2) a copy of that application is attached to this Policy when issued.

*WAIVER OR MODIFICATION* – Any change in this Policy's provisions must be in writing and signed by our President, Vice–President, Secretary, or Assistant Secretary. No agent or any other person, except those specified, has authority to change this contract or waive any of its provisions.

*INCONTESTABILITY* – This Policy will be incontestable after it has been in force for two years during the lifetime of the Insured. The two years will begin as of the Date of Issue. This provision does not apply to any rider for disability benefits or additional insurance specifically for death by accident.

*MISSTATEMENT OF AGE* – If age has been misstated in the application, we will be liable only for the amount of insurance the premiums paid would have purchased for the correct age.

*SUICIDE EXCLUSION* -- If the Insured ⬤ ) by suicide within two years of the Date of ⬤ .e, our only liability will be for the amount of premiums paid.

*NONPARTICIPATION* – This Policy does not participate in our profits or surplus.

*ASSIGNMENT* -- You may assign your rights under this Policy. To be binding on us, we must receive a copy of the assignment with Notice to Us. We do not assume any responsibility for the sufficiency or validity of any assignment. The interest of any Beneficiary not designated irrevocably will be subject to the rights of any assignee.

*PAYMENT OF PROCEEDS* -- Due proof of the death of the Insured must be sent to us. All payments by us are payable at our Executive Office. Proceeds at death include: (1) the Face Amount of this Policy; plus (2) any other benefits then due from Riders to this Policy; and minus (3) the overdue premium if death occurs during the Grace Period of an unpaid premium.

## PART 3
## BENEFICIARY PROVISIONS

*BENEFICIARY* – If the Beneficiary dies before the Insured, the interest of such Beneficiary ends. If the Insured dies, and there is no Beneficiary with any interest, proceeds will be paid to the owner of this Policy at that time. If no owner is then living, payment will be to the Insured's estate.

We may rely on a sworn statement by any responsible person to discover the identity or nonexistence of any Beneficiary not identified by name. If a Beneficiary is a partnership, we will pay the proceeds to the partnership as it is constituted at the time of the Insured's death.

*CHANGE OF BENEFICIARY* – A change of Beneficiary may only be made by Notice to Us. Such Notice to Us must be signed by you while the Insured is alive. A Beneficiary designated irrevocably may not be changed except with the written consent of that Beneficiary. A change of Beneficiary will take effect on the date the Notice to Us was signed, even if the Insured is not living when we receive the Notice, subject to any payment made by us in good faith before receiving the Notice.

## PART 4
## PREMIUM PROVISIONS

*PREMIUM PAYMENTS* -- Each premium is payable to Us in advance. You may also make payment through one of our agents. If you do, you must receive an official receipt. The receipt must be signed by our President or Secretary, and countersigned by our agent to be valid.

The first premium is due on or before delivery of this Policy. Subsequent premiums are due at 12, 6, 3, or 1 Policy month intervals depending on the premium frequency selected in the application. Subject to our approval, you may change the premium frequency for future premium payments upon Notice to Us. Premiums are not payable on and after the Expiry Date.

If a part of the premium is no longer payable under the provisions of a Rider, the total premiums will be reduced accordingly. No premiums will fall due after the death of the Insured.

*PREMIUM CHANGES* – Premiums payable for the basic Policy will be the Current Premiums shown on Page 3 and Page 3A, unless changed by us. We will review the Current Premiums each year. We reserve the right to change the Current Premiums after the first Policy year. We will not change them more often than once a year; and in no event will the Current Premiums be greater than the corresponding Maximum Premiums shown on Pages 3 and 3A. We will send you revised Policy Specifications pages to reflect any premium changes.

We will mail written notice to you at least 60 days prior to the date on which a change in the Current Premiums will become effective. Any such change will apply uniformly to all policies of this form issued in the same calendar year to Insureds having the same Issue Age, Premium Class, and state of residence.

*GRACE PERIOD* – This Policy h( ) .31 day Grace Period for payment of each( )emium due after the first. This means that if a premium is not paid on or before the date it is due, it may be paid during the following 31 days. No interest will be charged for this late payment. During this 31 days, the Policy will stay in force. If the Insured dies during the Grace Period of an unpaid premium, the overdue premium will be deducted from the proceeds payable. Otherwise, if you fail to pay the premium by the end of the Grace Period, this Policy will terminate.

*REINSTATEMENT* – If this Policy has terminated due to unpaid premiums, this Policy may be reinstated at any time that is: (1) within three years after the date of the first unpaid premium; and (2) prior to the Expiry Date. To be reinstated we must have: (1) evidence of insurability satisfactory to us for all persons to be covered; and (2) payment of all unpaid premiums; and (3) payment of interest on all unpaid premiums to the date of reinstatement at a rate of 6% per year compounded annually. The Policy will be reinstated on the date the application for reinstatement is approved by us.

## PART 5
## CONVERSION PROVISIONS

*CONVERSION AT ATTAINED AGE* – You may convert this Policy at any time after it has been in force for five years if the following conditions are met: (1) we receive Notice to Us for conversion; (2) you pay us the required premium no later than 31 days after the conversion date while the Insured is alive; (3) this Policy is in force on the conversion date; (4) the new plan is (a) the yearly renewable level term insurance to age 100 plan; or (b) the decreasing term insurance to age 100 plan; or (c) any other plan of insurance then available under our rules; and (5) the face amount of the new plan is not less than the minimum required by us for the plan selected nor greater than the face amount in effect on the conversion date under this Policy. We will not require evidence of insurability. The new plan will take effect on the conversion date. However, the incontestability and suicide exclusion provisions will be controlled by the Date of Issue of this Policy. We will issue either revised Policy Specifications or a new policy to reflect the converted plan of insurance.

Annual conversion premiums are shown in Table B on Page 3B. In the case of yearly renewable level term insurance to age 100, the face amount converted remains level while premiums increase each year with Attained Age. The Current premiums shown in Table B will apply unless changed by us. In the case of the decreasing term insurance to age 100 plan, the face amount decreases each year. The premiums for decreasing term insurance will be the Current premiums in effect under Table B for the initial face amount converted and for the Attained Age of the Insured at the time of conversion, unless later changed by us. In both cases, we reserve the right to change the Current premiums, up to the corresponding Maximum premiums shown in Table B in the same manner and subject to the same conditions as stated in the Premium Changes provision.

For the decreasing term insurance to age 100 plan, the face amount of insurance converted is payable if the Insured dies during the Policy year in which conversion is made. The face amount payable in subsequent Policy years will be determined by the Basic Annual Premium in effect at the time of conversion. Table C on Page 3C illustrates the minimum face amounts that could be applicable if the maximum premium rates of Table B were to apply before conversion. The Basic Annual Premium is the annual premium for the basic Policy less the Annual Policy Charge shown on Page 3.

Any other conversion plan will be issued at our premium rates for the Insured's Attained Age on the conversion date and for the same Premium Class as this Policy.

RIDERS – The continuation in the new plan of any benefits provided by Rider(s) attached to this Policy which are not converted will be subject to the provision, if any, in each Rider for continuation. The premium for any Rider continued after conversion will be added to the premium for the new plan.

## PART 6
## SETTLEMENT OPTIONS

Upon your written request, we will pay any proceeds of this Policy in accordance with one of the following options. If no settlement agreement is effective at the death of the Insured, the Beneficiary may select one of the following options for payment of the proceeds.

A settlement option will be available only if the amount to be applied for any payee is at least $1,000 and is also sufficient to provide a periodic installment or interest payment of at least $10. If the payee is not an individual receiving payment in his or her own right, a settlement option will be available only with our consent.

OPTION A. INSTALLMENTS FOR A FIXED PERIOD. – The proceeds will be paid in equal installments for the fixed period. The frequency of the installments and the fixed period will be as selected. The fixed period must not exceed 25 years. Table A on Page 8 shows the amount of the installments.

OPTION B. MONTHLY INSTALLMENTS FOR A FIXED PERIOD AND THEREAFTER FOR LIFE – The proceeds will be paid in equal monthly installments for a period of 10, 15, or 20 years and thereafter as long as the payee lives. The amount of each monthly installment will be determined from Table B on Page 8 according to: (1) the period selected; and (2) the age of the payee on the date the first installment is payable. If a monthly payment for a specific age shown in Table B is the same for more than one guaranteed minimum period, payment will be made for the longest period. ---------------

OPTION C. INTEREST. – The proceeds will be held by us subject to withdrawal in whole or in part at any time. Interest on any unpaid balance will be accumulated or paid annually, semiannually, quarterly or monthly as selected.

OPTION D. INSTALLMENTS OF A SELECTED AMOUNT – The proceeds will be paid in equal installments for the amount selected until the proceeds and interest are fully paid.

The first installment under Option A, B or D is payable on the date the option becomes effective. The interest rate for Option A, B, C or D is 3–1/2% annually. We may from time to time credit or pay excess interest under any Option. Any proceeds being held by us will be commingled with our general funds.

When the payee under any of the Options die, unless otherwise provided, we will pay in one sum to such payee's estate:

(1)  any unpaid sum left under Options C or D, plus any unpaid interest under those options; or

(2)  the commuted value of any remaining payments under Option A with interest at 3–1/2% per year; or

(3)  The commuted value of any remaining payments for the fixed period under Option B with interest at 3–1/2% per year.

## EQUAL MONTHLY INSTALLMENTS FOR EACH $1,000 PAYABLE UNDER OPTION A AND B

| TABLE A+ | | TABLE B | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Fixed Period In Years | | | | Fixed Period In Years | | | | Fixed Period In Years | | |
| Years | Amount | Age++ | 10 | 15 | 20 | Age++ | 10 | 15 | 20 | Age++ | 10 | 15 | 20 |
| 1 | $84.66 | **6 | 3.15 | 3.15 | 3.14 | 31 | 3.58 | 3.57 | 3.56 | 56 | 4.89 | 4.78 | 4.62 |
| 2 | 43.05 | 7 | 3.16 | 3.16 | 3.15 | 32 | 3.61 | 3.60 | 3.59 | 57 | 4.98 | 4.85 | 4.68 |
| 3 | 29.19 | 8 | 3.17 | 3.17 | 3.16 | 33 | 3.64 | 3.63 | 3.62 | 58 | 5.07 | 4.93 | 4.74 |
| 4 | 22.27 | 9 | 3.18 | 3.18 | 3.18 | 34 | 3.67 | 3.66 | 3.65 | 59 | 5.16 | 5.01 | 4.80 |
| 5 | 18.12 | 10 | 3.19 | 3.19 | 3.19 | 35 | 3.70 | 3.69 | 3.68 | 60 | 5.26 | 5.09 | 4.86 |
| 6 | 15.35 | 11 | 3.20 | 3.20 | 3.20 | 36 | 3.74 | 3.73 | 3.71 | 61 | 5.37 | 5.17 | 4.92 |
| 7 | 13.38 | 12 | 3.21 | 3.21 | 3.21 | 37 | 3.77 | 3.76 | 3.74 | 62 | 5.47 | 5.26 | 4.99 |
| 8 | 11.90 | 13 | 3.23 | 3.23 | 3.22 | 38 | 3.81 | 3.80 | 3.78 | 63 | 5.59 | 5.35 | 5.05 |
| 9 | 10.75 | 14 | 3.24 | 3.24 | 3.24 | 39 | 3.85 | 3.84 | 3.81 | 64 | 5.71 | 5.44 | 5.11 |
| 10 | 9.83 | 15 | 3.25 | 3.25 | 3.25 | 40 | 3.89 | 3.88 | 3.85 | 65 | 5.83 | 5.53 | 5.17 |
| 11 | 9.09 | 16 | 3.27 | 3.27 | 3.26 | 41 | 3.94 | 3.92 | 3.89 | 66 | 5.96 | 5.62 | 5.23 |
| 12 | 8.46 | 17 | 3.28 | 3.28 | 3.28 | 42 | 3.98 | 3.96 | 3.93 | 67 | 6.10 | 5.72 | 5.28 |
| 13 | 7.94 | 18 | 3.30 | 3.30 | 3.29 | 43 | 4.03 | 4.01 | 3.97 | 68 | 6.24 | 5.82 | 5.34 |
| 14 | 7.49 | 19 | 3.32 | 3.31 | 3.31 | 44 | 4.08 | 4.05 | 4.01 | 69 | 6.39 | 5.92 | 5.39 |
| 15 | 7.10 | 20 | 3.33 | 3.33 | 3.33 | 45 | 4.14 | 4.10 | 4.05 | 70 | 6.54 | 6.02 | 5.44 |
| 16 | 6.76 | 21 | 3.35 | 3.35 | 3.34 | 46 | 4.19 | 4.15 | 4.10 | 71 | 6.70 | 6.12 | 5.49 |
| 17 | 6.47 | 22 | 3.37 | 3.37 | 3.36 | 47 | 4.25 | 4.21 | 4.15 | 72 | 6.86 | 6.21 | 5.53 |
| 18 | 6.20 | 23 | 3.39 | 3.38 | 3.38 | 48 | 4.31 | 4.26 | 4.19 | 73 | 7.03 | 6.31 | 5.57 |
| 19 | 5.97 | 24 | 3.41 | 3.40 | 3.40 | 49 | 4.37 | 4.32 | 4.24 | 74 | 7.21 | 6.40 | 5.61 |
| 20 | 5.75 | 25 | 3.43 | 3.43 | 3.42 | 50 | 4.44 | 4.38 | 4.29 | 75 | 7.39 | 6.49 | 5.64 |
| 21 | 5.56 | 26 | 3.45 | 3.45 | 3.44 | 51 | 4.51 | 4.44 | 4.35 | 76 | 7.57 | 6.57 | 5.66 |
| 22 | 5.39 | 27 | 3.47 | 3.47 | 3.46 | 52 | 4.58 | 4.50 | 4.40 | 77 | 7.75 | 6.65 | 5.69 |
| 23 | 5.24 | 28 | 3.50 | 3.49 | 3.49 | 53 | 4.65 | 4.57 | 4.45 | 78 | 7.93 | 6.72 | 5.70 |
| 24 | 5.09 | 29 | 3.52 | 3.52 | 3.51 | 54 | 4.73 | 4.63 | 4.51 | 79 | 8.11 | 6.79 | 5.72 |
| 25 | 4.96 | 30 | 3.55 | 3.54 | 3.54 | 55 | 4.81 | 4.70 | 4.57 | *80 | 8.29 | 6.85 | 5.73 |

+ Multiply the monthly installment found in Table A by 2.991 to obtain the quarterly installment; by 5.957 to obtain the semiannual installment; and by 11.818 to obtain the annual installment.

++ The age in years is the age at the nearest birthday of the payee when payment begins.

* And over

** And under

**MODIFIED PREMIUM TERM LIFE INSURANCE TO AGE 100.**

**PREMIUMS SUBJECT TO CHANGE.**
**CONVERTIBLE AFTER FIVE YEARS TO YEARLY RENEWABLE LEVEL**
**OR DECREASING TERM INSURANCE.**

**NONPARTICIPATING**

# PRIMERICA LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 1 Primerica Parkway, Duluth, Georgia 30099–0001

## MODIFIED PREMIUM TERM INSURANCE ADDITIONAL BENEFITS RIDER ON INSURED
### PREMIUMS ARE SUBJECT TO CHANGE.

We have issued this Rider as a part of the Policy to which it is attached. Any payment under this Rider is subject to the provisions of this Rider and the Policy. In case of conflict between this Rider and the Policy, the Rider provisions will control.

### BENEFIT

We will pay the Rider Face Amount to the Beneficiary of this Rider upon receiving due proof that the Insured died before the Rider Expiry Date and while this Rider was in force.

### DEFINITIONS

*INSURED* – The person named in the Policy and Rider Schedules whose life is insured under the Policy and this Rider.

*RIDER FACE AMOUNT* – The Rider Face Amount is shown on Rider Page 3.

*RIDER EXPIRY DATE* – This date is shown on Rider Page 3. This Rider is no longer in force on and after that date unless renewed under the terms of the Automatic Renewal Provision.

*BENEFICIARY* – Unless otherwise stated in the application or by Notice to Us, the Beneficiary of this Rider will be the same as the Beneficiary of the Policy. The Beneficiary Provisions of the Policy shall apply to this Rider.

*RIDER DATE* – This date is shown on Rider Page 3 and is the effective date of coverage under this Rider. Rider anniversaries, Rider years and Rider months are measured from that date.

*ISSUE AGE* – The Insured's age on the birthday nearest the Rider Date.

*RIDER ATTAINED AGE* – The Insured's Issue Age plus the number of Rider years elapsed since the Rider Date.

*TERM PERIOD* – The Term Period of this Rider shall begin on the Rider Date and end after ten years or age 70, whichever is earlier.

### GENERAL PROVISIONS

*CONSIDERATION* – This Rider is issued in consideration of: (1) the application for this Rider, a copy of which is attached to the Policy; and (2) payment of the first premium for this Rider.

*PREMIUMS* – Premiums for this Rider are payable in addition to and under the same terms and conditions as the premiums for the Policy, except that Rider premiums shall cease to be payable whenever this Rider terminates. Premiums are not payable on and after the Rider Expiry Date.

*PREMIUM CHANGES* – Premiums payable each year for this Rider will be the premiums shown on Rider Pages 3 and 3A, unless changed by us. We will review the premiums each year. We reserve the right to change the premiums after the first Rider year. We will not change them more often than once a year, and in no event will the new premiums be greater than the maximum premium shown on Rider Page 3A. We will send you revised Rider Specifications to reflect any change in premiums.

We will mail written notice to you at least 60 days prior to the date on which a change in the premiums will become effective. Any such change will apply uniformly to all Riders of this form issued in the same calendar year to Insureds having the same Issue Age, Premium Class, and State of Residence.

*INCONTESTABILITY* – This Rider will be incontestable after it has been in force for two years during the lifetime of the Insured. The two years will begin as of the Rider Date of Issue.

*SUICIDE EXCLUSION* – If the Insured dies by suicide within two years of the Rider Date of Issue, our only liability under this Rider will be for the amount of premiums paid for it.

ML–967 TX

9.89

*MISSTATEMENT OF AGE* – If the age of the Insured has been misstated in the application, we will be liable only for the amount of insurance the premiums paid for this Rider would have purchased for the correct age.

*NONPARTICIPATION* – This Rider does not participate in our profits or surplus.

*AUTOMATIC RENEWAL PROVISION* – If this Rider is continued in force to the end of the Term Period, it will be automatically renewed under the terms of this provision unless we receive written notice of cancellation. The renewal shall be for an additional ten year Term Period or age 70, whichever is earlier. Evidence of insurability will not be required for renewal, only payment of the applicable premiums for the rates then in effect. These premium rates are shown on Rider Page 3A.

*TERMINATION* – This Rider shall terminate and no longer be in force: (1) if any premium remains unpaid after the end of the Grace Period; (2) if the Policy terminates or is continued under a nonforfeiture provision, if any; (3) on and after the Rider Expiry Date or age 70, whichever is earlier; or (4) on and after the date as of which you cancel it.

*CANCELLATION* – Upon written request by the owner of the Policy, this Rider may be cancelled on any premium due date.

*PRIVILEGE OF CONTINUATION* – If the Policy, exclusive of this Rider, is converted, this Rider may be continued as a part of the new plan of insurance.

*CONVERSION PROVISION* – Upon conversion of the base plan, this Rider may also be converted to a new plan of insurance on the life of the Insured if the following conditions are met: (1) we receive Notice to Us for conversion; (2) the required premium is paid to us no later than 31 days after the conversion date while the Insured is alive; (3) this Rider is in force on the conversion date; (4) the new plan is: (a) the yearly renewable level term insurance to age 100 plan; or (b) the decreasing term insurance to age 100 plan; or (c) any other plan of insurance available at a future date; and (5) the face amount of the new plan is not less than the minimum required by us for the plan selected nor greater than the Face Amount in effect under this Rider on the conversion date. We will not require evidence of insurability. The new plan will take effect on the conversion date. However, the Incontestability and Suicide Exclusion Provisions will be controlled by the Date of Issue of this Rider. We will issue revised specifications page(s) to reflect the converted plan of insurance.

Annual conversion premiums are shown in Table B on Rider Page 3B. In the case of yearly renewable level term insurance to age 100, the face amount converted remains level while premiums increase each year with Attained Age. The premiums will be determined by us but will not be greater than those shown in Table B. In the case of the decreasing term insurance to age 100 plan, the face amount decreases each year. The premiums for decreasing term insurance will be determined by us based on the initial face amount converted and the Rider Attained Age of the Insured at the time of conversion, but will not be greater than the rates shown in Table B. In both cases, any changes made in premiums, up to the maximum premiums shown in Table B, will be made in the same manner and subject to the same conditions as stated in the Premium Changes Provision of this Rider.

For the decreasing term insurance to age 100 plan, the face amount of insurance converted is payable if the Insured dies during the Rider year in which conversion is made. The face amount payable on the death of the Insured in subsequent Rider years will be determined by the Basic Annual Premium in effect at the time of conversion. Table C on Rider Page 3C illustrates the minimum face amounts that could be applicable if the maximum premium rates of Table B were to apply before conversion. The Basic Annual Premium is the annual premium for the converted plan less any Annual Policy Charge.

Any other conversion plan available at a future date will be issued at our premium rates for the Insured's Rider Attained Age on the conversion date and for the same Premium Class shown on Rider Page 3.

Signed at Duluth, Georgia, on the Date of Issue of this Rider.

Secretary                                                                 President

RIDER SPECIFICATIONS

| FORM NUMBER | RIDER FACE AMOUNT | RIDER YEAR | ANNUAL PREMIUMS* | DISABILITY WAIVER |
|---|---|---|---|---|
| ML-967TX | $400,000 | 1—10 | $288.00 | N/A |

*PREMIUMS ARE SUBJECT TO CHANGE AFTER THE FIRST RIDER YEAR,
BUT MAY NOT BE INCREASED BEYOND MAXIMUM PREMIUMS AS SHOWN ON PAGE 3A.
PREMIUMS FOR LATER RIDER YEARS ARE:  (1) ON RIDER PAGE 3A IF THE
RIDER IS CONTINUED TO THE RIDER EXPIRY DATE; OR (2) ON RIDER PAGE 3B
IF THE RIDER IS CONVERTED.  SEE PREMIUM AND CONVERSION PROVISIONS.

RIDER SCHEDULE

| | | | |
|---|---|---|---|
| POLICY NUMBER | 0421008265 | INSURED | JAMES L FULLER |
| ISSUE AGE | 30 | DATE OF ISSUE | DUPLICATE |
| RIDER FACE AMOUNT | $400,000 | RIDER DATE | MAY 17, 1990 |
| PREMIUM CLASS | STANDARD / NON-SMOKER | RIDER EXPIRY DATE | MAY 17, 2010 |

DUPLICATE

ML-967TX                    RIDER PAGE 3                    9.89

RIDER SPECIFICATIONS (CONT'D)

TABLE A

MAXIMUM ANNUAL PREMIUMS FOR RIDER CONTINUATION TO RIDER EXPIRY DATE
PER $1,000 RIDER FACE AMOUNT

| RIDER YEARS | MAXIMUM PREMIUMS |
|---|---|
| 2 | 1.80 |
| 3 | 1.80 |
| 4 | 1.80 |
| 5 | 1.80 |
| 6 | 1.80 |
| 7 | 1.80 |
| 8 | 1.80 |
| 9 | 1.80 |
| 10 | 1.80 |
| 11 | 3.13 |
| 12 | 3.13 |
| 13 | 3.13 |
| 14 | 3.13 |
| 15 | 3.13 |
| 16 | 3.13 |
| 17 | 3.13 |
| 18 | 3.13 |
| 19 | 3.13 |
| 20 | 3.13 |

DUPLICATE

**RIDER SPECIFICATIONS (CONT'D)**

**TABLE B**
**ANNUAL PREMIUMS PER $1,000 INITIAL CONVERTED FACE AMOUNT**

THESE PREMIUMS ARE APPLICABLE TO THE FACE AMOUNT CONVERTED UNDER THIS RIDER TO: (1) THE YEARLY RENEWABLE LEVEL TERM TO AGE 100 PLAN; OR (2) THE DECREASING TERM TO AGE 100 PLAN. SEE CONVERSION PROVISIONS.

| RIDER ATTAINED AGE | MAXIMUM ANNUAL PREMIUMS |
|---|---|
| 21 | $ 1.67 |
| 22 | 1.67 |
| 23 | 1.67 |
| 24 | 1.67 |
| 25 | 1.67 |
| 26 | 1.68 |
| 27 | 1.68 |
| 28 | 1.68 |
| 29 | 1.68 |
| 30 | 1.68 |
| 31 | 1.68 |
| 32 | 1.69 |
| 33 | 1.74 |
| 34 | 1.79 |
| 35 | 1.84 |
| 36 | 1.90 |
| 37 | 1.97 |
| 38 | 2.00 |
| 39 | 2.14 |
| 40 | 2.29 |
| 41 | 2.47 |
| 42 | 2.65 |
| 43 | 2.86 |
| 44 | 3.07 |
| 45 | 3.32 |
| 46 | 3.59 |
| 47 | 3.88 |
| 48 | 4.19 |
| 49 | 4.54 |
| 50 | 4.91 |
| 51 | 5.35 |
| 52 | 5.86 |
| 53 | 6.43 |
| 54 | 7.09 |
| 55 | 7.82 |
| 56 | 8.63 |
| 57 | 9.49 |
| 58 | 10.42 |
| 59 | 11.48 |
| 60 | 13.30 |

NOTE: AFTER DETERMINING PREMIUM FOR FACE AMOUNT, ADD ANNUAL POLICY CHARGE IF CONVERTED PLAN IS A SEPARATE POLICY. THE ANNUAL POLICY CHARGE IS $50.
* SUBJECT TO CHANGE. SEE CONVERSION PROVISIONS.

### RIDER SPECIFICATIONS (CONT'D)
#### TABLE B (CONT'D)
#### ANNUAL PREMIUMS PER $1,000 INITIAL CONVERTED FACE AMOUNT

THESE PREMIUMS ARE APPLICABLE TO THE FACE AMOUNT CONVERTED UNDER THIS RIDER TO: (1) THE YEARLY RENEWABLE LEVEL TERM TO AGE 100 PLAN; OR (2) THE DECREASING TERM TO AGE 100 PLAN. SEE CONVERSION PROVISIONS.

| RIDER ATTAINED AGE | MAXIMUM ANNUAL PREMIUMS |
|---|---|
| 61 | $ 15.25 |
| 62 | 16.70 |
| 63 | 18.84 |
| 64 | 20.62 |
| 65 | 22.51 |
| 66 | 24.30 |
| 67 | 26.35 |
| 68 | 28.67 |
| 69 | 31.38 |
| 70 | 34.63 |
| 71 | 38.91 |
| 72 | 42.56 |
| 73 | 47.44 |
| 74 | 52.92 |
| 75 | 58.80 |
| 76 | 65.08 |
| 77 | 71.64 |
| 78 | 78.47 |
| 79 | 85.72 |
| 80 | 93.67 |
| 81 | 102.52 |
| 82 | 112.52 |
| 83 | 123.79 |
| 84 | 136.11 |
| 85 | 149.20 |
| 86 | 162.80 |
| 87 | 176.79 |
| 88 | 190.89 |
| 89 | 205.29 |
| 90 | 220.19 |
| 91 | 235.84 |
| 92 | 252.75 |
| 93 | 271.63 |
| 94 | 295.65 |
| 95 | 329.96 |
| 96 | 384.55 |
| 97 | 480.20 |
| 98 | 657.98 |
| 99 | 956.94 |

NOTE: AFTER DETERMINING PREMIUM FOR FACE AMOUNT, ADD ANNUAL POLICY CHARGE IF CONVERTED PLAN IS A SEPARATE POLICY. THE ANNUAL POLICY CHARGE IS $50.
* SUBJECT TO CHANGE. SEE CONVERSION PROVISIONS.

### RIDER SPECIFICATIONS (CONT'D)
### TABLE C
### FACE AMOUNT PER $100 BASIC ANNUAL PREMIUM

THESE VALUES ILLUSTRATE THE FACE AMOUNT PAYABLE ON DEATH IF THIS RIDER IS CONVERTED TO DECREASING TERM INSURANCE TO AGE 100. BASIC ANNUAL PREMIUM DOES NOT INCLUDE ANY ANNUAL POLICY CHARGE. SEE CONVERSION PROVISIONS.

| RIDER ATTAINED AGE | MINIMUM FACE AMOUNT |
|---|---|
| 21 | $59,880 |
| 22 | 59,880 |
| 23 | 59,880 |
| 24 | 59,880 |
| 25 | 59,880 |
| 26 | 59,523 |
| 27 | 59,523 |
| 28 | 59,523 |
| 29 | 59,523 |
| 30 | 59,523 |
| 31 | 59,523 |
| 32 | 59,171 |
| 33 | 57,471 |
| 34 | 55,865 |
| 35 | 54,347 |
| 36 | 52,631 |
| 37 | 50,761 |
| 38 | 50,000 |
| 39 | 46,728 |
| 40 | 43,668 |
| 41 | 40,485 |
| 42 | 37,736 |
| 43 | 34,965 |
| 44 | 32,573 |
| 45 | 30,120 |
| 46 | 27,855 |
| 47 | 25,773 |
| 48 | 23,866 |
| 49 | 22,026 |
| 50 | 20,366 |
| 51 | 18,691 |
| 52 | 17,064 |
| 53 | 15,552 |
| 54 | 14,104 |
| 55 | 12,797 |
| 56 | 11,587 |
| 57 | 10,537 |
| 58 | 9,596 |
| 59 | 8,710 |
| 60 | 7,518 |

## RIDER SPECIFICATIONS (CONT'D)

### TABLE C (CONT'D)
### FACE AMOUNT PER $100 BASIC ANNUAL PREMIUM

THESE VALUES ILLUSTRATE THE FACE AMOUNT PAYABLE ON DEATH IF THIS RIDER IS CONVERTED TO
DECREASING TERM INSURANCE TO AGE 100. BASIC ANNUAL PREMIUM DOES NOT INCLUDE ANY ANNUAL
POLICY CHARGE. SEE CONVERSION PROVISIONS.

| RIDER ATTAINED AGE | MINIMUM FACE AMOUNT |
|---|---|
| 61 | $6,557 |
| 62 | 5,988 |
| 63 | 5,307 |
| 64 | 4,849 |
| 65 | 4,442 |
| 66 | 4,115 |
| 67 | 3,795 |
| 68 | 3,487 |
| 69 | 3,186 |
| 70 | 2,887 |
| 71 | 2,570 |
| 72 | 2,349 |
| 73 | 2,107 |
| 74 | 1,889 |
| 75 | 1,700 |
| 76 | 1,537 |
| 77 | 1,395 |
| 78 | 1,274 |
| 79 | 1,166 |
| 80 | 1,067 |
| 81 | 975 |
| 82 | 888 |
| 83 | 807 |
| 84 | 734 |
| 85 | 670 |
| 86 | 614 |
| 87 | 565 |
| 88 | 523 |
| 89 | 487 |
| 90 | 454 |
| 91 | 424 |
| 92 | 395 |
| 93 | 368 |
| 94 | 338 |
| 95 | 303 |
| 96 | 280 |
| 97 | 208 |
| 98 | 151 |
| 99 | 104 |

# PRIMERICA LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 1 Primerica Parkway, Duluth, Georgia 30099-0001

## MODIFIED PREMIUM SPOUSE TERM INSURANCE RIDER TO RIDER EXPIRY DATE
### Premiums Subject To Change

We have issued this Rider as a part of the Policy to which it is attached. Any payment under this Rider is subject to the provisions of this Rider and the Policy. In case of conflict between this Rider and the Policy, the Rider provisions will control.

### BENEFIT

We will pay the Rider Face Amount to the Beneficiary of this Rider upon receiving due proof that the Insured Spouse died before the Rider Expiry Date and while this Rider was in force.

*INSURED* – The person named in the Policy Schedule whose life is insured under the Policy.

*INSURED SPOUSE* – The spouse of the Insured who is named in the Rider Schedule and whose life is insured under this Rider.

*RIDER FACE AMOUNT* – The Rider Face Amount is shown on Rider Page 3.

*RIDER EXPIRY DATE* – This date is shown on Rider Page 3. This Rider is no longer in force on and after that date.

*BENEFICIARY* – Unless otherwise stated in the application or by Notice to Us, the Beneficiary of this Rider will be the Insured, if living; otherwise, the estate of the Insured Spouse.

*RIDER DATE* – This date is shown on Rider Page 3 and is the effective date of coverage under this Rider. Rider anniversaries, Rider years and Rider months are measured from that date.

*ISSUE AGE* – The Insured Spouse's age on the birthday nearest the Rider Date.

*ATTAINED AGE* – The Insured Spouse's Issue Age plus the number of Rider years elapsed since the Rider Date.

### GENERAL PROVISIONS

*CONSIDERATION* – This Rider is issued in consideration of: (1) the application for this Rider, a copy of which is attached to the Policy; and (2) payment of the first premium for this Rider.

*PREMIUMS* – Premiums for this Rider are payable in addition to and under the same terms and conditions as the premiums for the Policy, except that Rider premiums shall cease to be payable whenever this Rider terminates. Premiums are not payable on and after the Rider Expiry Date. If the Insured Spouse dies during the Grace Period of an unpaid premium, the overdue premium will be deducted from the benefits payable under this Rider.

*PREMIUM CHANGES* – Premiums payable each year for this Rider will be the Current Annual Premiums shown on Rider Pages 3 and 3A, unless changed by us. We will review the Current Premiums each year. We reserve the right to change the Current Premiums after the first Rider year. We will not change them more often than once a year, and in no event will the Current Premiums be greater than the corresponding Maximum Premiums shown on Rider Pages 3 and 3A. We will send you revised Rider Specifications to reflect any change in premiums.

We will mail written notice to you at least 60 days prior to the date on which a change in the Current Premiums will become effective. Any such change will apply uniformly to all Riders of this form issued in the same calendar year to insured spouses having the same Issue Age, Premium Class, and state of residence.

*INCONTESTABILITY* – This Rider will be incontestable after it has been in force for two years during the lifetime of the Insured Spouse. The two years will begin as of the Rider Date of Issue.

*MISSTATEMENT OF AGE* – If age of the Insured Spouse has been misstated in the application, we will be liable only for the amount of insurance the premiums paid for this Rider would have purchased for the correct age.

*SUICIDE EXCLUSION* – If the Insured Spouse dies by suicide within two years of the Rider Date of Issue, our only liability for this Rider will be for the amount of premiums paid for it.

*NONPARTICIPATION* – This Rider does not participate in our profits or surplus.

*CHANGE OF BENEFICIARY* – A change of Beneficiary for this Rider may only be made by filing a Notice to Us. Such Notice must be signed by you while the Insured Spouse is alive. A Beneficiary designated irrevocably may not be changed except with the written consent of that Beneficiary. A change of Beneficiary will take effect on the date the Notice to Us is signed, even if the Insured Spouse is not living when we receive the Notice, subject to any payment made by us in good faith before receiving the Notice.

*TERMINATION* – This Rider shall terminate and no longer be in force: (1) if any premium remains unpaid after the end of the Grace Period; (2) if the Policy terminates (subject to the Conversion at Death of Insured provision), or is continued under a nonforfeiture provision, if any; (3) if this Rider is converted to a new policy; (4) on and after the Rider Expiry Date; or (5) on and after the date as of which you cancel it.

*CANCELLATION* – Upon advance Notice to Us, you may cancel this Rider as of any premium due date.

*PRIVILEGE OF CONTINUATION* – If the Policy, exclusive of this Rider, is converted, this Rider may be continued as a part of the new plan of insurance.

*CONVERSION PROVISION* – This Rider may be converted after it has been in force for five years to a new plan of insurance on the life of the Insured Spouse if the following conditions are met: (1) we receive Notice to Us for conversion; (2) the required premium is paid to us no later than 31 days after the conversion date while the Insured Spouse is alive; (3) this Rider is in force on the conversion date; (4) the new plan is: (a) the yearly renewable level term insurance to age 100 plan; or (b) the decreasing term insurance to age 100 plan; or (c) any other plan of insurance then available under our rules; and (5) the face amount of the new plan is not less than the minimum required by us for the plan selected nor greater than the Face Amount in effect under this Rider on the conversion date. We will not require evidence of insurability. The new plan will take effect on the conversion date. However, the Incontestability and suicide exclusion provisions will be controlled by the Date of Issue of this Rider. We will issue either revised specifications or a new policy to reflect the converted plan of insurance.

Annual conversion premiums are shown in Table B on Rider Page 3B. In the case of yearly renewable level term insurance to age 100, the face amount converted remains level while premiums increase each year with Attained Age. The Current premiums shown in Table B will apply unless changed by us. In the case of the decreasing term insurance to age 100 plan, the face amount decreases each year. The premiums for decreasing term insurance will be the Current premiums in effect under Table B for the initial face amount converted and the Attained Age of the Insured Spouse at the time of conversion, unless later changed by us. In both cases, we reserve the right to change the Current premiums, up to the corresponding Maximum premiums shown in Table B, in the same manner and subject to the same conditions as stated in the Premium Changes provision of this Rider.

For the decreasing term insurance to age 100 plan, the face amount of insurance converted is payable if the Insured Spouse dies during the Rider year in which conversion is made. The face amount payable on the death of the Insured Spouse in subsequent Rider years will be determined by the Basic Annual Premium in effect at the time of conversion. Table C on Rider Page 3C illustrates the minimum face amounts that could be applicable if the Maximum premium rates of Table B were to apply before conversion. The Basic Annual Premium is the annual premium for the converted plan less any Annual Policy charge.

Any other conversion plan will be issued at our premium rates for the Insured Spouse's Rider Attained Age on the conversion date and for the same Premium Class shown on Rider Page 3.

*CONVERSION AT DEATH OF INSURED* – If this Rider is in force at the Insured's death, the Insured Spouse may convert this Rider to a new policy in accordance with the Conversion Provision except that: (a) the conversion must be made within 30 days after the death of the Insured; and (b) the effective date of the new policy will be the day after we receive written request for conversion. If the Insured Spouse dies before conversion takes effect and before the 31st day after the Insured's death, we will pay to the Beneficiary of this Rider the insurance in force under this Rider at the Insured's death, less any overdue premium for this Rider.

Signed at Duluth, Georgia on the Date of Issue of this Rider.

Secretary                                                                 President

RIDER SPECIFICATIONS

| FORM NUMBER | RIDER FACE AMOUNT | RIDER YEARS | ANNUAL PREMIUMS * CURRENT | MAXIMUM | DISABILITY WAIVER |
|---|---|---|---|---|---|
| ML-877ATX | $100,000 | 1—20 | $144.00 | $183.00 | ( NOT INCLUDED ) |

* CURRENT PREMIUMS ARE SUBJECT TO CHANGE AFTER THE FIRST RIDER YEAR, BUT
  MAY NOT BE INCREASED BEYOND MAXIMUM.  PREMIUMS FOR LATER RIDER YEARS
  ARE:  (1) ON RIDER PAGE 3A IF THE RIDER IS CONTINUED TO THE RIDER
  EXPIRY DATE; OR (2) ON RIDER PAGE 3B IF THE RIDER IS CONVERTED.
  SEE PREMIUM AND CONVERSION PROVISIONS.

RIDER SCHEDULE

| POLICY NUMBER | 0421008265 | INSURED SPOUSE | KIMBERLY A FULLER |
|---|---|---|---|
| ISSUE AGE | 27 | DATE OF ISSUE | DUPLICATE |
| RIDER FACE AMOUNT | $100,000 | RIDER DATE | MAY 17, 1990 |
| PREMIUM CLASS | STANDARD / NON-SMOKER | RIDER EXPIRY DATE | MAY 17, 2060 |

DUPLICATE

## RIDER SPECIFICATIONS (CONT'D)

**TABLE A**
**ANNUAL PREMIUMS FOR RIDER CONTINUATION TO RIDER EXPIRY DATE**
**PER $1,000 RIDER FACE AMOUNT**

| RIDER YEARS | CURRENT PREMIUMS* | MAXIMUM PREMIUMS |
|---|---|---|
| 2-20 | 1.44 | 1.83 |
| 21-40 | 6.54 | 8.70 |
| 41-43 | 23.27 | 28.32 |
| 44 | 27.17 | 34.63 |
| 45 | 29.43 | 38.91 |
| 46 | 30.54 | 42.56 |
| 47 | 32.25 | 47.44 |
| 48 | 35.24 | 52.92 |
| 49 | 38.54 | 58.80 |
| 50 | 42.16 | 65.06 |
| 51 | 46.07 | 71.64 |
| 52 | 50.28 | 78.47 |
| 53 | 54.79 | 85.72 |
| 54 | 59.61 | 93.67 |
| 55 | 64.59 | 102.52 |
| 56 | 69.94 | 112.52 |
| 57 | 78.19 | 123.79 |
| 58 | 88.58 | 136.11 |
| 59 | 95.59 | 149.20 |
| 60 | 101.85 | 162.80 |
| 61 | 112.45 | 176.79 |
| 62 | 126.34 | 190.89 |
| 63 | 136.50 | 205.29 |
| 64 | 147.17 | 220.19 |
| 65 | 155.00 | 235.84 |
| 66 | 163.32 | 252.75 |
| 67 | 174.01 | 271.63 |
| 68 | 187.76 | 295.65 |
| 69 | 207.80 | 329.96 |
| 70 | 242.18 | 384.55 |

* CURRENT PREMIUMS ARE SUBJECT TO CHANGE BUT MAY NOT BE INCREASED BEYOND MAXIMUM.
  SEE PREMIUM CHANGES PROVISION.

## RIDER SPECIFICATIONS (CONT'D)

### TABLE B
### ANNUAL PREMIUMS PER $1,000 INITIAL CONVERTED FACE AMOUNT

THESE PREMIUMS ARE APPLICABLE TO THE FACE AMOUNT CONVERTED UNDER THIS RIDER TO: (1) THE YEARLY RENEWABLE LEVEL TERM TO AGE 100 PLAN; OR (2) THE DECREASING TERM TO AGE 100 PLAN. SEE CONVERSION PROVISIONS.

| RIDER ATTAINED AGE | CURRENT ANNUAL PREMIUMS* | MAXIMUM ANNUAL PREMIUMS |
|---|---|---|
| 21 | $ 1.36 | $ 1.67 |
| 22 | 1.36 | 1.67 |
| 23 | 1.36 | 1.67 |
| 24 | 1.36 | 1.67 |
| 25 | 1.36 | 1.67 |
| 26 | 1.36 | 1.68 |
| 27 | 1.36 | 1.68 |
| 28 | 1.36 | 1.68 |
| 29 | 1.36 | 1.68 |
| 30 | 1.36 | 1.68 |
| 31 | 1.37 | 1.68 |
| 32 | 1.41 | 1.69 |
| 33 | 1.45 | 1.74 |
| 34 | 1.49 | 1.79 |
| 35 | 1.53 | 1.84 |
| 36 | 1.58 | 1.90 |
| 37 | 1.64 | 1.97 |
| 38 | 1.64 | 2.00 |
| 39 | 1.72 | 2.14 |
| 40 | 1.81 | 2.29 |
| 41 | 1.90 | 2.47 |
| 42 | 1.99 | 2.65 |
| 43 | 2.09 | 2.86 |
| 44 | 2.26 | 3.07 |
| 45 | 2.45 | 3.32 |
| 46 | 2.65 | 3.59 |
| 47 | 2.86 | 3.88 |
| 48 | 3.10 | 4.19 |
| 49 | 3.40 | 4.54 |
| 50 | 3.73 | 4.91 |
| 51 | 4.05 | 5.35 |
| 52 | 4.45 | 5.86 |
| 53 | 4.90 | 6.43 |
| 54 | 5.43 | 7.09 |
| 55 | 6.02 | 7.82 |
| 56 | 6.69 | 8.63 |
| 57 | 7.42 | 9.49 |
| 58 | 8.66 | 10.42 |
| 59 | 9.57 | 11.48 |
| 60 | 11.08 | 13.30 |

NOTE: AFTER DETERMINING PREMIUM FOR FACE AMOUNT, ADD ANNUAL POLICY CHARGE IF CONVERTED PLAN IS A SEPARATE POLICY. THE ANNUAL POLICY CHARGE IS $50.
* SUBJECT TO CHANGE. SEE CONVERSION PROVISIONS.

## RIDER SPECIFICATIONS (CONT'D)

### TABLE B (CONT'D)
#### ANNUAL PREMIUMS PER $1,000 INITIAL CONVERTED FACE AMOUNT

THESE PREMIUMS ARE APPLICABLE TO THE FACE AMOUNT CONVERTED UNDER THIS RIDER TO: (1) THE YEARLY RENEWABLE LEVEL TERM TO AGE 100 PLAN; OR (2) THE DECREASING TERM TO AGE 100 PLAN. SEE CONVERSION PROVISIONS.

| RIDER ATTAINED AGE | CURRENT ANNUAL PREMIUMS* | MAXIMUM ANNUAL PREMIUMS |
|---|---|---|
| 61 | $ 12.71 | $ 15.25 |
| 62 | 13.92 | 16.70 |
| 63 | 15.70 | 18.84 |
| 64 | 17.18 | 20.62 |
| 65 | 18.76 | 22.51 |
| 66 | 20.25 | 24.30 |
| 67 | 21.96 | 26.35 |
| 68 | 23.89 | 28.67 |
| 69 | 24.90 | 31.38 |
| 70 | 27.17 | 34.63 |
| 71 | 29.43 | 38.91 |
| 72 | 30.54 | 42.56 |
| 73 | 32.25 | 47.44 |
| 74 | 35.24 | 52.92 |
| 75 | 38.54 | 58.80 |
| 76 | 42.16 | 65.06 |
| 77 | 46.07 | 71.64 |
| 78 | 50.28 | 78.47 |
| 79 | 54.79 | 85.72 |
| 80 | 59.61 | 93.67 |
| 81 | 64.59 | 102.52 |
| 82 | 69.94 | 112.52 |
| 83 | 76.19 | 123.79 |
| 84 | 85.58 | 136.11 |
| 85 | 95.59 | 149.20 |
| 86 | 101.85 | 162.80 |
| 87 | 112.45 | 176.79 |
| 88 | 126.34 | 190.89 |
| 89 | 136.50 | 205.29 |
| 90 | 147.17 | 220.19 |
| 91 | 155.00 | 235.84 |
| 92 | 163.32 | 252.75 |
| 93 | 174.01 | 271.63 |
| 94 | 187.76 | 295.65 |
| 95 | 207.80 | 329.96 |
| 96 | 242.18 | 384.55 |
| 97 | 294.17 | 480.20 |
| 98 | 369.49 | 657.98 |
| 99 | 481.33 | 956.94 |

NOTE: AFTER DETERMINING PREMIUM FOR FACE AMOUNT, ADD ANNUAL POLICY CHARGE IF CONVERTED PLAN IS A SEPARATE POLICY. THE ANNUAL POLICY CHARGE IS $50.
* SUBJECT TO CHANGE. SEE CONVERSION PROVISIONS.



## RIDER SPECIFICATIONS (CONT'D)
### TABLE C
### FACE AMOUNT PER $100 BASIC ANNUAL PREMIUM

THESE VALUES ILLUSTRATE THE FACE AMOUNT PAYABLE ON DEATH IF THIS RIDER IS CONVERTED TO DECREASING TERM INSURANCE TO AGE 100. BASIC ANNUAL PREMIUM DOES NOT INCLUDE ANY ANNUAL POLICY CHARGE. SEE CONVERSION PROVISIONS.

| RIDER ATTAINED AGE | MINIMUM FACE AMOUNT |
|---|---|
| 21 | $59,880 |
| 22 | 59,880 |
| 23 | 59,880 |
| 24 | 59,880 |
| 25 | 59,880 |
| 26 | 59,523 |
| 27 | 59,523 |
| 28 | 59,523 |
| 29 | 59,523 |
| 30 | 59,523 |
| 31 | 59,523 |
| 32 | 59,171 |
| 33 | 57,471 |
| 34 | 55,865 |
| 35 | 54,347 |
| 36 | 52,631 |
| 37 | 50,761 |
| 38 | 50,000 |
| 39 | 46,728 |
| 40 | 43,666 |
| 41 | 40,485 |
| 42 | 37,735 |
| 43 | 34,965 |
| 44 | 32,573 |
| 45 | 30,120 |
| 46 | 27,855 |
| 47 | 25,773 |
| 48 | 23,866 |
| 49 | 22,026 |
| 50 | 20,366 |
| 51 | 18,691 |
| 52 | 17,064 |
| 53 | 15,552 |
| 54 | 14,104 |
| 55 | 12,787 |
| 56 | 11,587 |
| 57 | 10,537 |
| 58 | 9,596 |
| 59 | 8,710 |
| 60 | 7,518 |

## RIDER SPECIFICATIONS (CONT'D)

### TABLE C (CONT'D)
### FACE AMOUNT PER $100 BASIC ANNUAL PREMIUM

THESE VALUES ILLUSTRATE THE FACE AMOUNT PAYABLE ON DEATH IF THIS RIDER IS CONVERTED TO DECREASING TERM INSURANCE TO AGE 100. BASIC ANNUAL PREMIUM DOES NOT INCLUDE ANY ANNUAL POLICY CHARGE. SEE CONVERSION PROVISIONS.

| RIDER ATTAINED AGE | MINIMUM FACE AMOUNT |
|---|---|
| 61 | $6,557 |
| 62 | 5,988 |
| 63 | 5,307 |
| 64 | 4,849 |
| 65 | 4,442 |
| 66 | 4,115 |
| 67 | 3,795 |
| 68 | 3,487 |
| 69 | 3,186 |
| 70 | 2,887 |
| 71 | 2,570 |
| 72 | 2,349 |
| 73 | 2,107 |
| 74 | 1,889 |
| 75 | 1,700 |
| 76 | 1,537 |
| 77 | 1,395 |
| 78 | 1,274 |
| 79 | 1,166 |
| 80 | 1,067 |
| 81 | 975 |
| 82 | 888 |
| 83 | 807 |
| 84 | 734 |
| 85 | 670 |
| 86 | 614 |
| 87 | 565 |
| 88 | 523 |
| 89 | 487 |
| 90 | 454 |
| 91 | 424 |
| 92 | 395 |
| 93 | 368 |
| 94 | 338 |
| 95 | 303 |
| 96 | 260 |
| 97 | 208 |
| 98 | 151 |
| 99 | 104 |

# PRIMERICA LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 1 Primerica Parkway, Duluth, Georgia  30099–0001

## CHILDREN'S TERM INSURANCE RIDER

We have issued this Rider as a part of the Policy to which it is attached. Any benefits under this Rider are subject to the provisions of this Rider and the Policy. In case of conflict between this Rider and the Policy, the provisions of this Rider will control.

*BENEFITS* – We will pay to the beneficiary under this Rider, the Face Amount of this Rider shown on Page 3 of the Policy upon receipt of due proof that: (1) an insured Child's death occurred before the Insured Child's 25th birthday; and (2) such death occurred while this Rider was in force.

*INSURED* – "Insured" as used in this Rider means the Insured under the Policy to which this Rider is attached.

*INSURED CHILD(REN)* – "Insured Child(ren)" as used in this Rider means: (a) any child or stepchild or legally adopted child of the Insured; or (b) any child for whom the Insured has been granted legal guardianship; or (c) any grandchild(ren) of the Insured, living with and dependent upon the Insured for support. On the Rider Date, such Insured Child(ren) must be named in the Application and approved by us, subject to the Age of Insured Child(ren) provision.

After the Rider Date, each child born to the Insured and the spouse of the Insured shall automatically become an Insured Child upon attainment of the age of fifteen days.

Each child legally adopted by the Insured and spouse of the Insured after the Rider Date shall automatically become an Insured Child, subject to the Age of Insured Child(ren) provision. Coverage under this Rider with respect to such child shall be effective on the later of: (1) the date of adoption; or (2) the date such child attains age fifteen days.

After the Rider Date, a child not named in the Application or not automatically covered by this Rider may become an Insured Child provided evidence of insurability satisfactory to us is furnished. Such evidence of insurability shall, in part, be based upon a supplemental application. Upon approval by us, the "Rider Date" with respect to such child shall be the later of: (1) the date of such supplemental application, subject to the Age of Insured Child(ren) provision; or (2) the date such child attains age fifteen days.

*AGE OF INSURED CHILD(REN)* – On the effective date of coverage of this Rider with respect to any Insured Child, such child must be chiefly dependent on the Insured for support and maintenance, not less than fifteen days of age, and under twenty–five years of age.

Any child shall cease to be an Insured Child upon the attainment of age twenty–five. There shall be no liability under this Rider with respect to such child thereafter.

*BENEFICIARY* – Unless otherwise stated in the application or by Notice to Us, the beneficiary under this Rider shall be the Insured, if living; otherwise the executors or administrators of the Insured Child upon whose death payment is to be made.

You have the right to change the beneficiary for an Insured Child while such child is alive in the same way and subject to the same conditions as a change of Beneficiary for the Insured's death benefit.

*PAID–UP TERM INSURANCE* – If the Insured dies while this Rider is in force, this Rider shall automatically be converted to nonparticipating paid–up term insurance. Such insurance shall provide a face amount equal to the face amount of this Rider on the life of each Insured Child to the date that such child attains age twenty–five. Each Insured Child shall be the owner of his (her) insurance. Any paid–up policy issued will be incontestable with respect to each Insured Child two years from the Rider Date.

Any paid–up term insurance provided hereby shall have cash values. The paid–up term insurance may be surrendered for its cash value at any time. If surrender of any paid–up term insurance is made within thirty–one (31) days after an anniversary date, the cash value of such insurance shall not be less than the value at the anniversary. Values shall be calculated using the Commissioners 1980 Standard Ordinary Mortality Table and interest at the rate of 6% per annum.

*CONVERSION* – If all premiums have been duly paid, any insurance under this Rider on the life of an Insured Child may be converted without evidence of insurability to any plan of term life insurance written by us at the date of conversion when: (1) such child attains age twenty–five; or (2) when this Rider terminates, if earlier. Premiums for the new policy will be at our standard rate then in effect for the attained age of the Insured Child. Conversion may be made for an amount of insurance which must not be less than the minimum then required by us for the plan selected nor greater than five times the Face Amount of this Rider.

We must receive within thirty–one days of the date of conversion: (1) a Notice to Us for such conversion; (2) the required premium.

The Suicide and Incontestability provision(s) in the new policy(ies) shall be operative from the Rider Date.

*TERMINATION* – This Rider shall terminate and shall no longer be in force: (1) if any premium remains unpaid after the end of the Grace Period; (2) if the Policy is surrendered or continued under a nonforfeiture provision, if any; (3) if the Policy becomes paid–up or matures or terminates; (4) on any premium due date as of which you have requested cancellation of this Rider by advance Notice to Us; or (5) in any event on the Policy Expiry Date.

*MISSTATEMENT OF AGE* – Misstatement of age of any Insured Child shall not continue the insurance on his (her) life on and after such child's twenty–fifth birthday.

*INCONTESTABILITY* – The insurance as to each Insured Child will become incontestable after it has been in effect during the lifetime of that child for two years from the Rider Date.

*SUICIDE* – If an Insured Child commits suicide within two years of the Rider Date, our liability under this rider will be limited to the payment of a single sum equal to the premiums paid for it, if the Insured Child is the only insured person under this Rider.

*REINSTATEMENT* – You may reinstate the Policy with this Rider in accordance with the Reinstatement provision of the Policy. You must provide evidence satisfactory to us of the insurability of each child who will be insured under the reinstated Rider. No benefit will be payable for any Insured Child who died between the end of the Grace Period and the date of reinstatement.

*GENERAL* – This Rider is issued in consideration of the application, a copy of which is attached to and made a part of the Policy, and payment of the first premium for this Rider. The premium for this Rider is shown in the Policy Specifications and is payable in addition to the premium for the Policy, except that such Rider premium shall cease to be payable whenever this Rider terminates.

Any nonforfeiture option available under the Policy shall not be changed by this Rider.

If an Insured Child dies during the Grace Period of an unpaid premium, we will deduct the overdue premium from the benefits of this Rider.

*PRIVILEGE OF CONTINUATION* – If the Policy to which this Rider is attached is converted, this Rider may be continued as part of the new plan of insurance.

*RIDER DATE* – The Rider Date of this Rider shall be the Date of Issue of the Policy unless a different date is shown here or is specified in the Insured Child(ren) provision.

Signed at Duluth, Georgia, on the Rider Date.

Secretary                              President

ML–909 B                                                                                      10.88

# PRIMERIC◌LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 1 Primerica Parkway, Duluth, Georgia 30099–0001

## SPOUSE TERM INSURANCE RIDER

### INITIAL LEVEL PREMIUM PERIOD FOR 10 YEARS

### PREMIUMS ARE SUBJECT TO CHANGE

We have issued this Rider as a part of the Policy to which it is attached. Any payment under this Rider is subject to the provisions of this Rider and the Policy. In case of conflict between this Rider and the Policy, the provisions of this Rider will control.

This Rider is effective at 12:01 A.M. on the Rider Date of Issue.

### BENEFIT

We will pay the Rider Face Amount, in a lump sum, to the Beneficiary of this Rider upon receiving due proof that the Insured Spouse died before the Rider Expiry Date and while this Rider was in force.

### DEFINITIONS

These are some key words used in this Rider.

*BENEFICIARY* – The person(s) to whom the rider proceeds are payable upon the death of the Insured Spouse. Unless otherwise stated in the application or later changed (See Change of Beneficiary Provision, below), the Beneficiary of this Rider will be the Insured, if living; otherwise the estate of the Insured Spouse. If the Beneficiary is a partnership, We will pay the rider proceeds to the partnership as it is constituted at the time of the Insured Spouse's death.

*INSURED* – The person whose life the Policy insures and who is named in the Policy Specifications.

*INSURED SPOUSE* – The person whose life this Rider insures. This person is the spouse of the Insured and is named in the Rider Specifications.

*NOTICE TO US* – Information We have received which is written, signed by You and acceptable to Us.

*PREMIUM CLASS* – The risk classification used in determining what premiums You pay.

*RIDER ATTAINED AGE* – The Insured Spouse's Rider Issue Age plus the number of rider years since the Rider Date.

*RIDER DATE* – The date shown on Rider Page 3 from which rider anniversaries, rider years and rider months are measured.

*RIDER DATE OF ISSUE* – The date shown on Rider Page 3 on which We issue the Rider to You. This date controls the Incontestability and Suicide Exclusion provisions shown below.

*RIDER EXPIRY DATE* – The date shown on Rider Page 3. This Rider is not in force on or after this date.

*RIDER FACE AMOUNT* – The amount of insurance for each rider year which is shown in Table A on Rider Page 3A.

*RIDER ISSUE AGE* – The Insured Spouse's age on the birthday nearest the Rider Date.

*WE, OUR or US* – Primerica Life Insurance Company.

*YOU or YOUR* – The Owner of the Policy. Unless You tell Us otherwise, the Owner is the Insured.

### GENERAL PROVISIONS

*CONSIDERATION* – This Rider is issued in consideration of: (1) the application for this Rider, a copy of which is attached to the Policy; and (2) payment of the first premium for this Rider.

*PREMIUM PAYMENTS* – Premiums for this Rider are payable in addition to, but under the same terms and conditions as, the premiums for the Policy. The premiums shown on Rider Page 3A are for the premium payment option You chose. Modal factors are used to determine the premium payment for all payment options. The modal factors are 0.095 for monthly, 0.265 for quarterly, 0.520 for semiannual, and 1.000 for annual. To calculate the approximate premium for a payment option other than the one You chose: (1) divide the premium shown on Rider Page 3A by the modal factor for that payment option; and (2) multiply the result by the modal factor for the premium payment option You would like to determine. You may change the premium payment option for future premium payments upon acceptable Notice to Us. The premium payment option for this Rider must be the same premium payment option as the Policy. We will provide You with premium rates for other payment options upon written request. Premiums are not due for any period after the Insured Spouse's death, the Rider Expiry Date or when this Rider terminates.

*PREMIUM CHANGES BY COMPANY* – Premiums for this Rider will be the scheduled premiums shown on Rider Pages 3 and 3A, unless changed by Us. We reserve the right to change the scheduled premiums. We will not change them more often than once a year, and in no event will the scheduled premiums be greater than the guaranteed maximum premiums shown on Rider Page 3A. Any such change will apply uniformly to all riders of this form issued to Insured Spouses having the same Rider Issue Age, duration and Premium Class. No change in premiums or Premium Class will occur because of deterioration of the Insured Spouse's health or change in occupation.

We will mail written notice to You at least 60 days prior to the date on which a change in Your scheduled premiums will become effective. We will send You new rider specifications pages to reflect any changes in scheduled premiums.

*MISSTATEMENT OF AGE* – If the age of the Insured Spouse has been misstated in the application, We will be liable only for the amount of insurance the premiums paid would have purchased for the correct age.

*INCONTESTABILITY* – We will not contest this Rider after it has been in force for two years during the Insured Spouse's life. The two years begin on the Rider Date of Issue.

*SUICIDE EXCLUSION* – If the Insured Spouse dies by suicide, while sane or insane, within two years of the Rider Date of Issue, We are only liable for the premiums paid.

*REPLACED COVERAGE* – If insurance coverage (excluding group coverage) is to be replaced, as shown in the application, and has terminated: (a) prior to the Insured Spouse's death, including death by suicide; and (b) between 60 days before and 60 days after the Rider Date of Issue, We will not contest the amount of the replaced coverage that would not have been contestable had it not been replaced. If it is not possible to terminate any coverage to be replaced because of its provisions within 60 days after the Rider Date of Issue, such 60-day period will be extended to the earliest possible date for the coverage to be terminated under its provisions. For example, the Insured Spouse is insured under another company's plan for $100,000 and that plan has been in force two years. If this Rider replaced the other company's plan, We would not contest this Rider for up to $100,000. We would however, be able to contest any amount over $100,000. You will not lose the time accrued for the amount of insurance replaced due to this Rider's Incontestability and Suicide Exclusion provisions.

*NONPARTICIPATION* – This Rider does not participate in Our profits or surplus.

*PAYMENT OF PROCEEDS* – Due proof of the death of the Insured Spouse must be sent to Us at Our Executive Offices. We must receive a certified death certificate, completed claim forms and a valid authorization for Us to obtain all medical and other records concerning the Insured Spouse. Death proceeds equal: (1) the Rider Face Amount; minus (2) any overdue premium for the Policy and any Riders, if the Insured Spouse's death occurs during a grace period.

*CHANGE OF BENEFICIARY* – You can change a Beneficiary of this Rider by Notice to Us. You can only change a Beneficiary while the Insured Spouse is alive. A Beneficiary designated irrevocably on Our records may not be changed except with the written consent of that Beneficiary. A Beneficiary change will take effect on the date You signed the Notice to Us. If the Insured Spouse died before We receive this Notice, the change is effective, subject to any prior payment of proceeds.

*TERMINATION* – This Rider shall terminate and no longer be in force: (1) if any premium remains unpaid after the end of the grace period; (2) if the Policy terminates (subject to the Exchange at Death of Insured Provision) or is continued under a nonforfeiture provision, if any; (3) if this Rider is exchanged to a new policy; (4) on and after the Rider Expiry Date; or (5) on and after the date You cancel it.

*CANCELLATION* – You may cancel this Rider at anytime by sending written Notice to Us. Your Rider will be canceled as of the date We receive the Notice, or, if stated in the Notice, as of a later date. If this Rider is canceled before the Rider Expiry Date and premiums have been paid in advance, We will refund any unearned portion of the premiums paid beyond the end of the rider month in which cancellation occurred.

*EXCHANGE PROVISION* – You may exchange this Rider at any time after it has been in force for five years to any plan of insurance available at a future date for exchange, as periodically determined by Us. This new plan will be issued at Our premium rates for that plan for the Insured Spouse's Rider Attained Age on the exchange date based on the same Premium Class shown on Rider Page 3. We will not require evidence of insurability. The new plan will take effect on the exchange date and this Rider will terminate. However, the new plan's Incontestability and Suicide Exclusion provisions will be controlled by this Rider Date of Issue. We will issue a new exchange policy.

The following conditions are necessary for exchange: (1) We receive Notice to Us requesting an exchange; (2) the face amount of the new plan is not less than the minimum required by Us nor greater than the Face Amount in effect under this Rider on the exchange date; (3) the required premium is paid within 31 days after the exchange date; (4) the Insured Spouse is alive; (5) this Rider is in force on the exchange date; and (6) premiums for Your current Rider are not being waived.

*EXCHANGE AT DEATH OF INSURED* – If this Rider is in force at the Insured's death, it may be exchanged for a new policy in accordance with the Exchange Provision except that: (a) the exchange must be made within 30 days after the Insured's death; and (b) the effective date of the new policy will be the day We receive written request for exchange. If the Insured Spouse dies before exchange takes effect and within 30 days after the Insured's death, We will pay to the Beneficiary of this Rider the insurance in force under this Rider at the Insured's death, less any overdue premium for this Rider.

*EXCHANGE AT POLICY EXPIRY* – If this Rider is in force at expiry of the Policy, it may be exchanged for a policy in accordance with the Exchange Provision except that: (a) the exchange must be made within 30 days after the Policy expiry date; and (b) the effective date of the policy will be the day We receive written request for the exchange.

Signed on the Rider Date of Issue at Our Executive Offices.

Secretary

President

RIDER SPECIFICATIONS

POLICY NUMBER:      0421008265      INSURED SPOUSE:  KIMBERLY A FULLER

RIDER ISSUE AGE:   40               RIDER DATE OF ISSUE:  DUPLICATE

RIDER FACE
       AMOUNT:      $150,000       RIDER DATE:          MARCH 17, 2003

PREMIUM CLASS:     PREFERRED        RIDER EXPIRY DATE:   MARCH 17, 2058

| FORM NUMBER | PLAN NAME | RIDER FACE AMOUNT | SCHEDULED ANNUAL PREMIUMS* YEARS 1-10 |
|---|---|---|---|
| CP-S10TX | SPOUSE TERM INSURANCE RIDER | $150,000 | $117.00 |

*The Scheduled Annual Premiums shown above are guaranteed for the years for
which premium amounts are shown.  All premiums for the premium payment option
You chose are shown on Rider Page 3A and explained in the Premium Changes
by Company provision.

DUPLICATE

(THIS PAGE INTENTIONALLY LEFT BLANK)

ER SPECIFICATIONS (CONT'D)

---

TABLE A
QUARTERLY PREMIUMS FOR RIDER CONTINUATION TO EXPIRY DATE

| RIDER YEARS | RIDER ATTAINED AGE | SCHEDULED QUARTERLY PREMIUMS* | GUARANTEED MAXIMUM QUARTERLY PREMIUMS | RIDER FACE AMOUNT |
|---|---|---|---|---|
| 01 | 40 | $31.01 | $31.01 | $150,000.00 |
| 02 | 41 | $31.01 | $31.01 | $150,000.00 |
| 03 | 42 | $31.01 | $31.01 | $150,000.00 |
| 04 | 43 | $31.01 | $31.01 | $150,000.00 |
| 05 | 44 | $31.01 | $31.01 | $150,000.00 |
| 06 | 45 | $31.01 | $31.01 | $150,000.00 |
| 07 | 46 | $31.01 | $31.01 | $150,000.00 |
| 08 | 47 | $31.01 | $31.01 | $150,000.00 |
| 09 | 48 | $31.01 | $31.01 | $150,000.00 |
| 10 | 49 | $31.01 | $31.01 | $150,000.00 |
| 11 | 50 | $149.46 | $360.54 | $150,000.00 |
| 12 | 51 | $149.46 | $360.54 | $150,000.00 |
| 13 | 52 | $149.46 | $360.54 | $150,000.00 |
| 14 | 53 | $149.46 | $360.54 | $150,000.00 |
| 15 | 54 | $149.46 | $360.54 | $150,000.00 |
| 16 | 55 | $250.43 | $601.82 | $150,000.00 |
| 17 | 56 | $250.43 | $601.82 | $150,000.00 |
| 18 | 57 | $250.43 | $601.82 | $150,000.00 |
| 19 | 58 | $250.43 | $601.82 | $150,000.00 |
| 20 | 59 | $250.43 | $601.82 | $150,000.00 |
| 21 | 60 | $411.81 | $1,014.03 | $150,000.00 |
| 22 | 61 | $411.81 | $1,014.03 | $150,000.00 |
| 23 | 62 | $411.81 | $1,014.03 | $150,000.00 |
| 24 | 63 | $411.81 | $1,014.03 | $150,000.00 |
| 25 | 64 | $411.81 | $1,014.03 | $150,000.00 |
| 26 | 65 | $686.88 | $1,740.26 | $150,000.00 |
| 27 | 66 | $686.88 | $1,740.26 | $150,000.00 |
| 28 | 67 | $686.88 | $1,740.26 | $150,000.00 |
| 29 | 68 | $686.88 | $1,740.26 | $150,000.00 |
| 30 | 69 | $686.88 | $1,740.26 | $150,000.00 |
| 31 | 70 | $1,220.33 | $2,312.66 | $150,000.00 |
| 32 | 71 | $1,326.06 | $2,598.86 | $150,000.00 |
| 33 | 72 | $1,431.80 | $2,894.20 | $150,000.00 |
| 34 | 73 | $1,556.61 | $3,253.94 | $150,000.00 |
| 35 | 74 | $1,698.52 | $3,677.28 | $150,000.00 |
| 36 | 75 | $1,853.55 | $4,312.08 | $150,000.00 |
| 37 | 76 | $2,435.88 | $5,033.15 | $150,000.00 |
| 38 | 77 | $2,707.38 | $5,837.29 | $150,000.00 |
| 39 | 78 | $2,996.76 | $6,728.49 | $150,000.00 |
| 40 | 79 | $3,309.99 | $7,730.98 | $150,000.00 |

*Scheduled premiums may change, but they will not increase above the
guaranteed maximum premiums.  See Premium Changes by Company provision.



DUPLICATE

RIDER SPECIFICATIONS (CONT'D)

TABLE A (CONT'D)
QUARTERLY PREMIUMS FOR RIDER CONTINUATION TO EXPIRY DATE

| RIDER YEARS | RIDER ATTAINED AGE | SCHEDULED QUARTERLY PREMIUMS* | GUARANTEED MAXIMUM QUARTERLY PREMIUMS | RIDER FACE AMOUNT |
|---|---|---|---|---|
| 41 | 80 | $3,709.47 | $8,430.18 | $150,000.00 |
| 42 | 81 | $4,415.04 | $9,198.15 | $150,000.00 |
| 43 | 82 | $5,224.35 | $10,046.82 | $150,000.00 |
| 44 | 83 | $6,149.33 | $10,980.94 | $150,000.00 |
| 45 | 84 | $7,189.19 | $11,982.24 | $150,000.00 |
| 46 | 85 | $8,349.89 | $13,046.75 | $150,000.00 |
| 47 | 86 | $9,628.65 | $14,159.75 | $150,000.00 |
| 48 | 87 | $11,033.41 | $15,324.42 | $150,000.00 |
| 49 | 88 | $12,563.39 | $16,530.84 | $150,000.00 |
| 50 | 89 | $14,233.29 | $17,791.71 | $150,000.00 |
| 51 | 90 | $15,886.49 | $18,912.26 | $150,000.00 |
| 52 | 91 | $17,646.62 | $20,053.08 | $150,000.00 |
| 53 | 92 | $19,551.44 | $21,251.55 | $150,000.00 |
| 54 | 93 | $21,658.19 | $22,560.51 | $150,000.00 |
| 55 | 94 | $24,229.22 | $24,229.22 | $150,000.00 |

*Scheduled premiums may change, but they will not increase above the
guaranteed maximum premiums. See Premium Changes by Company provision.

*IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE*
*TEXAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION*
*(For insurers declared insolvent or impaired on or after September 1, 2011)*

Texas law establishes a system to protect Texas policyholders if their life or health insurance company fails. The Texas Life and Health Insurance Guaranty Association ("the Association") administers this protection system. Only the policyholders of insurance companies that are members of the Association are eligible for this protection which is subject to the terms, limitations, and conditions of the Association law. (The law is found in the *Texas Insurance Code*, Chapter 463.)

**It is possible that the Association may not protect all or part of your policy because of statutory limitations.**

### Eligibility for Protection by the Association

When a member insurance company is found to be insolvent and placed under an order of liquidation by a court or designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:

- Residents of Texas (**regardless of where the policyholder lived when the policy was issued**)
- Residents of other states, ONLY if the following conditions are met:

    1. The policyholder has a policy with a company domiciled in Texas;
    2. The policyholder's state of residence has a similar guaranty association; and
    3. The policyholder is *not eligible* for coverage by the guaranty association of the policyholder's state of residence.

### Limits of Protection by the Association

**Accident, Accident and Health, or Health Insurance:**

- For each individual covered under one or more policies: up to a total of $500,000 for basic hospital, medical–surgical, and major medical insurance, $300,000 for disability or long term care insurance, or $200,000 for other types of health insurance.

**Life Insurance:**

- Net cash surrender value or net cash withdrawal value up to a total of $100,000 under one or more policies on a single life; or
- Death benefits up to a total of $300,000 under one or more policies on a single life; or
- Total benefits up to a total of $5,000,000 to any owner of multiple non–group life policies.

**Individual Annuities:**

- Present value of benefits up to a total of $250,000 under one or more contracts on any one life.

**Group Annuities:**

- Present value of allocated benefits up to a total of $250,000 on any one life; or
- Present value of unallocated benefits up to a total of $5,000,000 for one contractholder regardless of the number of contracts.

**Aggregate Limit:**

- $300,000 on any one life with the exception of the $500,000 health insurance limit, the $5,000,000 multiple owner life insurance limit, and the $5,000,000 unallocated group annuity limit.

These limits are applied for each insolvent insurance company.

**Insurance companies and agents are prohibited by law from using the existence of the Association for the purpose of sales, solicitation, or inducement to purchase any form of insurance. When you are selecting an insurance company, you should not rely on Association coverage. For additional questions on Association protection or general information about an insurance company, please use the following contact information.**

Texas Life and Health Insurance
  Guaranty Association
515 Congress Avenue, Suite 1875
Austin, Texas 78701
800–982–6362 or www.txlifega.org

Texas Department of Insurance
P.O.Box 149104
Austin, Texas 78714–9104
800–252–3439 or www.tdi.state.tx.us

MCF–255 TX

9.11

(THIS PAGE LEFT INTENTIONALLY BLANK)

JAMES L FULLER
5455 HONEYSUCKLE RD
MIDLOTHIAN TX 76065

0421008265

# DUPLICATE

POLICYOWNER'S TELEPHONE NUMBER:

NO PHONE #

**IMPORTANT: PLEASE VERIFY THE ABOVE INFORMATION
AND CALL OUR CUSTOMER SERVICE DEPARTMENT WITH ANY
CHANGES AT 1-800-257-4725.

0421008265

FILE COPY

FILE COPY

FILE COPY

March 09, 2010

For Client Services
Mon. - Fri. 8am - 5pm
Call 1-800-257-4725
1-800-338-6866 Spanish
Hearing Impaired Call:
1-800-824-1715

14310
James L Fuller
5455 Honeysuckle Rd
Midlothian, TX 76065-7006

Re:   Policy Number - 0421008265
      Insured - James L Fuller

Dear Valued Policyowner:

Your current insurance policy with Primerica Life has a rider(s)
attached that will reach the end of it's term and expire 05/17/2010.
At that time, your premium will change to $453.16.

This change is scheduled to occur within the next 60 days, and we
strongly encourage you to review your life insurance needs.

To help you make an informed financial decision concerning options that
may be available to you, please contact your Primerica Life
representative.  If you are unable to reach him/her, please call our
toll free Client Services Line.

As always, we appreciate your business.

Sincerely,

*Valerie Usher*

Valerie Usher
Client Services

EXHIBIT
C

ZOAH          14310  04-28107    14310                                    10.95

# EXHIBIT "3"

Filed 4/27/2015 4:15:12 PM
Melanie Reed
District Clerk
Ellis County, Texas

**Ellis County District Clerk**

Ellis County - District Clerk

**Questions: 972-825-5091**

E-FILING REQUEST FOR ISSUANCE

## CITATIONS,WRITS,NOTICE,PRECEPT,TRO, ETC..

- This document Must be filed as a separate LEAD document when e-filing
- Choose the filing code "Request" and add the type of issuance in the description field
- Select the type of issuance using the "Optional Services" section on the e-filing screen
- If a service document is required, you MUST add the copies using the "Optional Services" section, select Certified Copies/Regular Copies and add as many pages as needed.(Ex: Petition is 5 pages, 3 citations are requested: 5x3=15 pages will need to be printed by Clerk at $1.00 per page).

Cause No. ___91445_____    Document to
be served: Plaintiff's Original Petition _____

Style of Case: Kim Fuller v. Primerica Life Insurance Company _____

_____

## PLEASE USE THIS FORM WHEN REQUESTING ISSUANCE OF THE BELOW
## LISTED TYPES OF ISSUANCE THROUGH THE E-FILING SYSTEM.

PLEASE USE OTHER REQUEST FORMS FOR: ABSTRACTS, EXECUTIONS, SUBPOENAS AND ORDER WITHHOLDING

## Please select the type and quantity of issuance(s) needed:

| Type | Amt. | Quantity | Type | Amt. | Quantity |
|------|------|----------|------|------|----------|
| Citation | $8 | 1 | Writ: Attachment | $8 | |
| Notice | $8 | | Writ: Certiorari | $8 | |
| Precept | $8 | | Writ: Commitment | $8 | |
| Temporary Restraining Order | $8 | | Writ: Garnishment | $8 | |
| Scire Facias | $8 | | Writ: Possession | $8 | |
| Letter Rogatory | $8 | | Writ: Sequestration | $8 | |
| Show Cause Notice | $8 | | Writ: Turnover | $8 | |
| | | | Writ: Other | $8 | |

**All service payment options are chosen by picking the correct options in the**
**"Optional Service" section of e-filing**

1

Name of Party to be served: **Primerica Life Insurance Company**   Type: _____

Address for service: **CT Corporation System**
_____

**1999 Bryan Street, Suite 900**
_____

**Dallas, TX  75201-3136**
_____

Name of Party to be served: _____   Type: _____

Address for service: _____

_____

_____

Name of Party to be served: _____   Type: _____

Address for service: _____

_____

_____

Please attach additional pages if there are more parties to be served.

# ALL CITATIONS WILL BE E-FILED BACK TO YOU UNLESS YOU CHOOSE ONE OF THE FOLLOWING OPTIONS.

[✓] I have paid for a copy of the document to attach to the issuance and would like it sent by certified mail.

[ ] I have paid for a copy of the document to attach to the issuance and would like it served by Ellis County Sheriff/Constable: SHF [ ] ; PCT1 [ ] ; PCT2 [ ] ; PCT3 [ ] ; PCT4 [ ]

[ ] I have paid for a copy of the document to attach to the issuance and would like it served by posting. (A Motion & Order are required.)

[ ] I would like issuance served by Publication. (A Motion & Order are required.)
Name of Publication _____

| | |
|---|---|
| **Requestor Name:** | E. Glenn Thames, Jr. |
| **Phone No.** | 903-597-8311 |
| **E-Mail Address:** | glennthames@potterminton.com |

2

# EXHIBIT "4"

# THE STATE OF TEXAS
## COUNTY OF ELLIS
### CAUSE NO: 91445
# CITATION

**ORIGINAL**

**TO:** PRIMERICA LIFE INSURANCE COMPANY
REG AGENT, CT CORPORATION SYSTEM
1999 BRYAN ST, STE 900
DALLAS, TX 75201-3136

Defendant, in the hereinafter styled and numbered cause: 91445

You are hereby commanded to appear before 40TH JUDICIAL DISTRICT COURT of ELLIS COUNTY, TEXAS to be held at the courthouse of said county in the City of Waxahachie, County of Ellis County, Texas, by filing a written answer to the petition of Plaintiff at or before 10:00 A.M. of the Monday next after the expiration of 20 days after the date of service hereof, a copy of which accompanies this citation, in cause number **91445** styled

### FULLER, KIM
### VS.
### PRIMERICA LIFE INSURANCE COMPANY

Filed in said court on the 04/27/2015

The name and address of the attorney for plaintiff, or the address of the plaintiff is: GLENN THAMES, JR., 110 N. COLLEGE ST, AVE, STE 500, TYLER, TX 75702.

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorneys do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of 20 days after you were served this citation and petition, a Default Judgment may be taken against you."

WITNESS: Melanie Reed, District Clerk of the District Court of Ellis County, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF SAID COURT AT COUNTY OF ELLIS, TEXAS, ON THIS THE 29th day of April, 2015.

**Melanie Reed, District Clerk**
**109 S. Jackson Street Rm. 209**
**Waxahachie, TX 75165**

**SEAL**

By _____
Mary Hinds, Deputy

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |

Postmark Here

7014 0510 0002 3589 1705

PRIMERICA LIFE INSURANCE CO
91445, CM#70140510000235891705
REG AGENT, CT CORPORATION SYSTEM
1999 BRYAN ST, STE 900
DALLAS, TX 75201-3136

PS Form 3800, August 2006     See Reverse for Instructions

## OFFICER'S RETURN - CAUSE # 91445

FULLER, KIM                                    **IN THE 40TH JUDICIAL DISTRICT COURT**
VS.                                                        **OF**
PRIMERICA LIFE INSURANCE COMPANY             **ELLIS COUNTY, TEXAS**

**NAME AND ADDRESS FOR SERVICE:**
PRIMERICA LIFE INSURANCE COMPANY
REG AGENT, CT CORPORATION SYSTEM
1999 BRYAN ST, STE 900
DALLAS, TX 75201-3136

Came to hand on the _____ day of _____, 20____, at _____, o'clock ____.m., and executed by delivering to the within named defendant, VIA CMRRR, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the PLAINTIFF'S ORIGINAL PETITION, at the following times and places, to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|---|---|---|
| | | |

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being: _____

and the cause or failure to execute this process is: _____

and the information received as to the whereabouts of said defendant(s) being: _____

**FEES:**
Serving Petition and Copy $ _____      _____, Officer
Total                 $ _____      _____, County, Texas
                                     By:_____, Deputy

                                     _____Affiant

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The return must either be verified or be signed under penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____, and my address is _____
            (First, Middle, Last)
_____.
(Street, City, Zip)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.
Executed in _____County, State of _____, on the _____day of _____.

                                _____
                                Declarant/Authorized Process Server

                                _____
                                (Id # & expiration of certification)

**RETURN TO:**
Melanie Reed Ellis County District Clerk
109 S. Jackson Street Rm. 209
Waxahachie, TX 75165

                STATE OF TEXAS     §
                COUNTY OF ELLIS     §
                SIGNED under oath before me on this _____day of _____,20____.

                                          _____
                                          Notary Public, State of Texas

# EXHIBIT "5"

91445

Case 3:15-cv-01764-P   Document 1-1   Filed 05/21/15   Page 71 of 72   PageID 74   Melanie Re
Ellis County - District Clerk                                                                District Cle
                                                                                            Ellis County, Tex

Filed 5/18/2015 9:48:56 A

CAUSE NO. 91445

| | | |
|---|---|---|
| KIM FULLER, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ELLIS COUNTY, TEXAS |
| | § | |
| PRIMERICA LIFE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | 40TH JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER

Defendant Primerica Life Insurance Company ("Primerica") files this Original Answer to Plaintiff's Original Petition ("Petition") filed by Plaintiff Kim Fuller ("Plaintiff") and states:

### I.   GENERAL DENIAL

Primerica denies all the allegations contained in Plaintiff's Petition pursuant to Rule 92 of the Texas Rules of Civil Procedure and demands strict proof thereof in accordance with the laws of the State of Texas.

### II.   PRAYER

Primerica requests the following relief:

a.   That Plaintiff take nothing by reason of her suit;

b.   That Plaintiff's claims be dismissed with prejudice;

c.   That Primerica recover its attorneys' fees and costs of court; and

d.   That Primerica has all such other and further relief, at law and in equity, to which Primerica may show itself to be justly entitled.

Respectfully submitted,

By:   /s/ Bill E. Davidoff
       Bill E. Davidoff
       State Bar No. 00790565
       bill.davidoff@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX 75202
TEL: 214.939.2000
FAX: 214.939.2090

ATTORNEYS FOR DEFENDANT
PRIMERICA LIFE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

On the 18th day of May, 2015, the foregoing instrument was sent via electronic service to E. Glenn Thames, Jr., Potter Minton, 110 N. College Avenue, Suite 500, Tyler, TX 75702.

   /s/ Bill E. Davidoff
   Bill E. Davidoff